LOUISE M. FARRIS, PLAINTIFF-RESPONDENT, v. FARRIS ENGINEERING CORP., ET AL., DEFENDANTS-APPELLANTS.

Argued June 4, 1951—Decided June 25, 1951.

488

490

*Mr. John Milton* argued the cause for the appellants; Messrs. *Milton, McNulty & Augelli*, attorneys; *Mr. Morris M. Ravin*, of counsel.

*Mr. Walter G. Winne* argued the cause for the respondent; Messrs. *Winne and Banta*, attorneys.

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal by the defendants-appellants from a judgment of the Chancery Division which adjudged that the respondent had a one-half ownership in the stock and properties of the Farris Engineering Corporation and the Farris Industrial Corporation and directing each of these corporations to issue one-half of its stock to the respondent or her nominees bearing a notation that it was issued pursuant to the judgment of the court. The respondent cross-appealed from that part of the judgment which approved a salary of $40,000 a year being paid to the appellant as president and general manager of the Farris Engineering Corporation. These appeals were taken to the Appellate Division and were certified here on our own motion.

The judgment below was entered after trial of the issues in two separate causes which were consolidated for trial by the trial court. The consolidation took place after a pretrial order had been entered in the action brought by the respondent against the appellant.

The appellant instituted an action on June 28, 1948, against the respondent in which he sought an accounting of

certain properties held in her hands and asked that a writ of sequestration issue and a receiver be appointed for such properties, and further asking that the respondent be compelled to join in proper instruments to convey her interest in the Farris Engineering Company to the Farris Engineering Corporation and that she execute assignments of the stock of the Farris Industrial Corporation standing in her name, and that she be specifically required to perform her agreement with the appellant and she be further restrained from hypothecating either her interest in the Farris Engineering Company and her stock in the Farris Engineering Corporation and the Farris Industrial Corporation.

Two days later the respondent filed her action in which she alleged that she was a 50 per cent partner in the Farris Engineering Company and had contributed equal amounts in capital and services to this company which was a partnership and that she had a one-half interest in the assets of the partnership and in its profits and losses. She asked that a receiver be appointed for the corporations and that the officers and accountants of these corporations be compelled to set up on the books of these corporations her respective stock interests. The appellant answered and counterclaimed in this suit, the counterclaim following generally along the lines of the action set forth in his own complaint.

The parties were husband and wife and had lived happily together and helped each other in the various enterprises engaged in by the husband but came to the parting of the ways when, it is alleged, the wife committed a very serious matrimonial offense. Actually this occurrence had a destructive effect upon their business relations which were carried on through a group of corporations and a partnership, which were the conduits and operational bases for the various enterprises carried on in which the husband was the primary operating force. These were admittedly set up for the purpose of reducing income tax payments which might be due under the federal Income Tax Law, and this was particularly true of the partnership.

The case is not without difficulty and requires a determination of what was the basic and underlying intention of the parties as between themselves, and this can only be spelled out from an appraisal of the various transactions.

The parties were married in 1931 and up to about 1941 the husband had not been financially successful in business. He had eked out an existence as a salesman in the employ of several companies in the midwest and after seven or eight years they had achieved a gross savings of some $1,500 which was in a joint account in a bank in Chicago. They maintained no home but in their own words "lived out of suit cases in hotels." At the trial the wife attempted to show that during this period she contributed considerable skill, knowledge, experience and work so that any and all increments to the family wealth were substantially the result of her joint efforts with those of her husband. But a careful reading of the record fails to substantiate this contention and leaves the definite impression that the husband was the prime producer and the wife's contribution was the normal contribution of a wife who cooperates with and encourages her husband.

In 1936 the appellant was employed with Manning, Maxwell & Moore at a salary of $6,500, but there was little saved from this and in 1937 he obtained employment with Kieley & Mueller, manufacturers of valves, under a salary arrangement. In 1941 he became general manager of this company with a profit-sharing arrangement which anticipated considerable income with war work looming up. Within six months thereof his savings went up from $1,500 to $8,500 which was deposited in the joint account in the Chicago bank. Within the next year in addition to that his savings reached the additional sum of $28,000. This money was placed around in various bank accounts which will be referred to later, but there is nothing in the record to indicate that the wife contributed substantially to the production of these savings.

On February 18, 1943, at the expiration of his contract with Kieley & Mueller the appellant decided to go into business for himself and opened an account in the Hudson Trust Company in Hoboken under the trade name of Farris Engineering Company, and there was deposited in this account the sum of $28,298.51. This total was made up of the following amounts: $11,424.94 coming directly from appellant's employment with Kieley & Mueller, also $1,047.77 which came from a brokerage account in his name with J. S. Bache & Co.; $5,875 came from an account in the Hudson Trust Company in the name of the appellant, and $10,000 was drawn out of a joint account in the Northern Valley National Bank in Tenafly, on February 25, 1943, there having been deposited in that account on the same day $8,358.99 from the settlement of his account with Kieley & Mueller. There was a withdrawal from the Hudson Trust Company of $49.20 which accounts for the difference in the figures. On or about this time about $5,500 was withdrawn from the Chicago account and placed in the Northern Valley account over which the appellant held the power of attorney.

At this time the parties had five separate bank accounts: the Chicago bank account was a joint account, there was a joint account in the Northern Valley National Bank in the name of "Louise and/or Victor Farris," another account in the same bank in the name of "Louise Farris, V. W. Farris attorney," and another account in the same bank in the name of "Louise Farris" individually. The Hudson Trust Company account was in the name of "V. W. Farris" individually.

At this point the appellate consulted with his lawyers and he was advised it would be better to organize a corporation and not carry on the extensive business which he contemplated merely under the trade name of the Farris Engineering Company. Pursuant to this advice and through the Corporation Trust Company a corporation known as the Farris Engineering Corporation was organized and eight

shares of stock were finally issued to the appellant, one share to his wife and one share to Charles J. Thomas, the father of the wife. This was apparently done to qualify the latter two as directors. The business quickly prospered to such an extent that the lawyers and accountants advised the appellant that it would be advisable if the husband and wife form a partnership for tax purposes. The manner in which this partnership was set up is in dispute, the wife contending that it was on a 50-50 basis and that she had equally contributed her share of the capital which had accrued to her as a result of her work with her husband over the years preceding. The husband's contention is that the partnership was set up solely for tax purposes and in compliance with the requirements of the federal Income Tax Law and that there was a definite understanding that the agreement as to equal shares only related to profits.

In the pretrial order entered in the action instituted by the respondent against the appellant it is stated "the defendant Farris admits the plaintiff had a half interest in the partnership, but contends that the entire business of the partnership was on war work which came to an end with the cessation of hostilities in 1945." The respondent makes much of this admission but she did not rely on it wholly. At the trial she undertook and endeavored to prove that her contributions, both in capital and services, were such over the period of their married life that it justified a declaration of a half interest in the stock of the corporations which succeeded to the rights of the partnership. Both sides seem to have abandoned the admission and proceeded on the broad theory that the question should be determined on the pleadings and all the facts under the general law applicable to partnerships. On his part the appellant produced a copy of the partnership agreement signed by the respondent which states that the appellant and respondent were in a co-partnership doing business under the name of Farris Engineering Company and it further states that both are to receive a fair and reasonable salary for services, and contained the following provisions:

"our liability for co-partnership debts is to be in the same proportion as our respective investments. In the event of the liquidation of said co-partnership our distributive shares shall be equal to the proportionate share of our respective investments."

During the war the partnership did a flourishing business and made large profits, and federal Income Tax returns were filed on the basis that profits were shared equally. The respondent testified that the profits were credited on the books in the following amounts equally; in 1943, $19,078.44, February 28, 1945, $116,213.42, February 28, 1946, $21,-906.83. However, she admitted that these amounts were not withdrawn from the business and in this her testimony is consistent with that of the appellant to the effect that any money that was withdrawn was withdrawn from the drawing account rather than from capital or profit account, and that the most that was withdrawn in any year was some $7,000 or $8,000, for living expenses, and such money as was withdrawn was put in the joint account in the Tenafly bank.

In 1944 the accountants found it desirable to set up a second corporation which was known as the Farris Industrial Corporation. This corporation was used to acquire title to certain real properties which were used in the operation of the business. The money and capital for these properties and the operation of this corporation was taken from the capital and funds of the partnership, the Farris Engineering Company, in the sum of $8,500. The capital stock of the Industrial Corporation was of no par value and 30 shares were issued; 14 shares to Victor W. Farris and 14 shares to respondent Louise Farris and two shares to Charles J. Thomas, the father of respondent. It seems to be conceded in this case that this corporation was completely owned and controlled by the partnership and that it also was set up for tax purposes.

As and when the business expanded the wife became a permanent employee of the partnership and worked there daily in charge of the bookkeeping and management of the

clerical office staff and sometimes helped with the procurement and purchase of supplies. During this period she contributed by her efforts to the production of income for the corporation and for reasons which will appear hereafter this was necessary if their tax problem was to be resolved along the lines intended.

In 1946 with the ending of the war it was found that the partnership was in financial difficulties because taxes absorbed the best part of the profits, and while its assets exceeded its liabilities by $25,000, there was outstanding a contingent liability to the government on the re-negotiation of contracts which was indeterminate at that time and which was subsequently determined to be in the amount of $39,000. Therefore it was decided to dissolve the partnership and arrangements were made to that end and all its assets were turned over to the Farris Engineering Corporation which in turn assumed all the partnership liabilities. This was a rather involved transaction and required corporate action on the part of the several corporations involved, together with the execution of releases and documents necessary to bring such a series of transactions to completion. At this time it was calculated and agreed that the capital interest in the partnership was valued at $25,365.76, the appellant's interest was $23,930.10 and the wife's interest $1,446.66. On the bookkeeping the partnership account showed roughly $25,-000 to $26,000 which was owed to the appellant and respondent, and this together with a $5,000 credit of the Industrial Corporation was carried over onto the books of the basic or original corporation, the Farris Engineering Corporation, and added to the original capital thereof of $3,400 so that the capital stock account showed a $35,000 credit in both of their names. But the corporation assumed outstanding bank liabilities in excess of this amount which were to be liquidated by the corporation.

The trial court found as a fact that when the original $28,000 was distributed and deposited among the various joint bank accounts that there was a presumption of gift and

then found further that while the partnership was formed for the purpose of minimizing income tax he must presume that such an action was *bona fide* and not fraudulent upon the United States, making no distinction whatsoever in the fact that the requirements of the federal Income Tax Law as to the liability for taxes might be different from the elements necessary to establish a partnership in this State where the partners might not only share in the profits on an equal basis but might not respond equally for partnership losses. He further held the Uniform Partnership Act, *R. S.* 42 :1–7, provides that receipt by a person of ·a share of the profits of a business is *prima facie* evidence he is a partner in the business and that it followed from that that receipt of half the profits indicated likewise half 'ownership in the business and therefore found that the plaintiff was owner of a half interest in the partnership throughout its existence and should be entitled to an equal share of the issued stock of the corporations inasmuch as all the capital of these was furnished by the partnership.

We do not think such conclusions necessarily follow from the filing of an income tax return which satisfies the federal income tax authorities with respect to taxable income under the income tax law, nor that a half ownership in all the assets of the partnership necessarily follows· as a matter of law because the profits are split equally.

This partnership was formed for tax purposes and the formation and operation of the partnership were such as were intended to bring it within the meaning of sections 181 and 182 of the Income Tax Act, 26 *U. S. C. A.* § 181, 182. The dominant purposes of all the sections of the revenue laws including these is the taxation of income to those who earn or otherwise create the right to receive and enjoy the benefit of it when it is paid.

A partnership is generally said to be created when persons join together their money, goods, labor or skill for the purpose of carrying on a trade, profession, or business, and where there is a community of interest in the profits or

losses, but there can be a partnership for income tax purposes where the community of interest does not extend to the sharing on an equal basis of the assets and losses of the corporation. And this is particularly true of a partnership involving a wife and a husband if she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services or does all these things, she may be a partner as contemplated by sections 181 and 182 of the Income Tax Act. But the tax is a tax on income which is the gain derived from capital, from labor, or from both combined, and a partnership for the purposes of the act is an organization for the production of income to which each partner contributes one or both of the ingredients of income-capital or services. *Commissioner of Internal Revenue v. Tower*, 327 *U. S.* 280, 66 *Sup. Ct.* 532, 90 *L. Ed.* 670 (1946); *Commissioner v. Culbertson*, 337 *U. S.* 733, 69 *Sup. Ct.* 1210, 93 *L. Ed.* 1659 (1949). *Cf. Lusthaus v. Commissioner*, 327 *U. S.* 293, 66 *Sup. Ct.* 539, 90 *L. Ed.* 679 (1946).

In the *Tower* case the Supreme Court flatly held that the several states by their decisions and laws concerning the formation or legality of rights and liabilities of partnership cannot have the final say to decide issues on federal tax laws; the court said "statutes of Congress designed to tax income actually earned because of the capital efforts of each individual member of a joint enterprise are not to be frustrated by state laws which for state purposes prescribe the relations of the members to each other and to outsiders." From which it would seem to be reasonably concluded that a finding of a partnership as to income exists under the federal tax law is equally not conclusive under the state law which defines the relations of the members to each other and to outsiders.

A review of the entire record in this case discloses a design to so arrange the financial transactions of the partnership and the corporate set-ups as to bring the appellant and respondent within the provisions of the federal statute taxing

income from partnerships. As we read the *Towers* and *Culberlson* cases the partnership arrangement could very well have been taxable under the federal act as a partnership because the contribution and efforts of the wife aided in the creation of the income and this would be so whether she made any contribution of capital or not. The plaintiff attempted to demonstrate her contribution to capital at great length in the trial below.

But having reached this point the question to be determined is whether there was a partnership under the state law not only as to equal division of profits and losses but also as to responsibility for liabilities of the partnership and an equal right in the assets of the corporation. The trial court, though conceding the husband produced all of the original sum of $28,000 which was used to start the operation of these various enterprises, found as a fact that because some of the money was deposited in joint bank accounts that there was a presumption of a gift of a half interest to the wife which was not overcome by the evidence at the trial. In so doing he relied upon the case of *Strong v. Strong,* 134 *N. J. Eq.* 513 (*Ch.* 1944), affirmed 136 *N. J. Eq.* 103 (*E. & A.* 1945), but this case involved a real estate transaction where title was acquired in the wife's name, the consideration being paid with the funds of the husband. In that case Judge Jayne stated the underlying reason for the rule to be applicable to real property and that the rule is one of public policy concerned with the stability of land titles and that the apparent authenticity and efficiency of a recorded deed should not be diversified except upon satisfactory and explicit proof of a contemporaneous intention inconsistent with the grant manifestly exhibited by the deed. But this rule does not apply with equal force to personal property and particularly funds in bank accounts. In such transactions the question is one as to whether a valid gift *inter vivos* has been made *in praesenti.*

The requisite elements of such an *inter vivos* gift are (1) a donative intent on the part of the donor; (2) an actual

(or symbolical) delivery of the subject-matter of the gift; and, (3) an absolute relinquishment by the donor of ownership and dominion over the subject-matter of the gift, at least to the extent practicable or possible, considering the nature of the thing to be given. *Farrow v. Farrow*, 72 *N. J. Eq.* 421 (*E. & A.* 1907); *Kirkpatrick v. Kirkpatrick*, 106 *N. J. Eq.* 391, 398 (*Ch.* 1930); *Hanstein v. Kelly*, 131 *N. J. Eq.* 132 (*Prerog. Ct.* 1942); *Kelly v. Kelly*, 134 *N. J. Eq.* 316, 319 (*Prerog.* 1944). The proof of these essential elements should be clear, cogent and persuasive. *Farrow v. Farrow, supra; Kelly v. Kelly, supra.*

▬ The supposition is erroneous that one who deposits his own funds in a new account in the name of himself and another is to be thereby conclusively presumed to have made a gift of one-half of the account to the other or to have created a joint tenancy in the account. A simple compounded joint account might in reasonable probability be intentionally originated and maintained solely for the expediency of the one depositor. A joint account, *i. e.*, one entered to the credit of two individuals, is not inevitably to be recognized as inherently a joint tenancy where the moneys deposited belong solely to the one. Some fact or circumstance evidential of a donative intent must be apparent to warrant the inference of a joint tenancy. *Kelly v. Kelly, supra, page* 320 and the cases cited there. *Cf. Meyer v. Meyer,* 124 *N. J. Eq.* 481 (*Ch.* 1938).

▬▬ Where a deposit is opened, for example, in the name of "John Smith and/or Ella Smith," and the depositor deposits his money in this manner so that from the moment of deposit he is at liberty to draw it out when he pleases, then there is not such a complete stripping of the donor of all dominion or control over the thing given so that it can be said as a matter of law that the gift is complete. *Morristown Trust Co. v. Capstick,* 90 *N. J. Eq.* 22 (*Ch.* 1919), affirmed *sub nom, Morristown Trust Co. v. Safford,* 91 *N. J. Eq.* 152 (*E. & A.* 1919). A deposit in such form is clearly distinguishable from a deposit when the account is opened

in the following language: "This account and all moneys to be credited in it belong to us as joint tenants and will be the absolute property of the survivor of us; either and the survivor to draw." In such cases there is a clear intent to make a gift *in praesenti*. *Steinmetz v. Steinmetz*, 130 *N. J. Eq.* 176 (*Ch.* 1941); *Goc v. Goc*, 133 *N. J. Eq.* 206 (*Ch.* 1943*)*, affirmed 134 *N. J. Eq.* 61 (*E. & A.* 1943); *Kelly v. Kelly, supra*.

A consideration of all the facts, from the earning of the funds by the husband in the year 1942 and 1943 up to and including the deposit of part of them in the two joint accounts in the Northern Valley National Bank of Tenafly, does not spell out clearly or persuasively a clear intent to make a gift to the wife *in praesenti* or to create a joint tenancy as a matter of law. The manner in which the funds were handled thereafter under the complete control and domination of the appellant, so that they were shifted from here to there as the financial demands of his business enterprises required, negatives any idea that he relinquished control over all or any part thereof. He had the right to withdraw all and any part of the funds at any time and he exercised this right freely, and we are not convinced that it was his intention at any time to make an absolute, irrevocable gift of one-half of these funds to his wife. It is not disputed that the account in the Northern Valley National Bank in the name of Louise Farris is her property wholly and completely.

We turn now to the establishment of the partnership in question. The fact of partnership, as well as the right, duties and obligations of partners, arise wholly from the terms of the contract, and as to third persons and creditors the same rule prevails, except where the persons concerned have held themselves out as partners and have acted ostensibly as interested in the business as if they were partners in it. *Wild v. Davenport*, 48 *N. J. L.* 129 (*E. & A.* 1886).

While the statute, *R. S.* 42:1–7, creates a *prima facie* presumption of a partnership where the profits are shared, not every agreement that gives the right to share

profits is for all purposes a partnership agreement. *Wild v. Davenport, supra; Jackson v. Hooper,* 76 *N. J. Eq.* 185 (*Ch.* 1909); *Fenwick v. U. C. C. of N. J.,* 133 *N. J. L.* 295 (*E. & A.* 1945). But the sharing of the profits will make an individual a partner as to creditors of the firm even though it be expressly agreed that such persons shall not be so considered. *Voorhees v. Jones,* 29 *N. J. L.* 270 (*Sup. Ct.* 1861). One of the real tests of a partnership is the inquiry whether the agreement was of such a nature that the one was the agent for the other or others. *Wild v. Davenport, supra; Jackson v. Hooper, supra.*

 The mere ownership of property or part ownership of property used in a business does not of itself establish a partnership, *R. S.* 42:1–7, and it is not inconsistent for partners having different capital investments to share the profits on an equal basis. *Greiss v. Platzer,* 131 *N. J. Eq.* 160 (*Ch.* 1943).

The husband was the dominating factor in the operation of this business; the wife's duties which produced some of the income were those of an office manager. It is not clear that she was for all purposes the agent of her husband in the operation of this business and her duties were more consistent with the express agreement relied on by the husband than with her claim that she was a full and equal partner in equal control of the business, entitled to one-half of the profits and one-half of the properties involved. And this despite the fact she was a co-signer on some of the banking obligations of the company and in a great many instances signed checks for various business transactions for the company. She was consulted concerning some of the financial arrangements in the business but the husband at all times exercised control. And it was his engineering knowledge and technical skill which was the creative and producing force which made the business successful.

When he originally went into business he set up the basic corporation, the Farris Engineering Corporation, to carry on the business, and in that corporation he had issued to

himself eight shares of stock and one share each to his wife and her father to qualify them as directors. And it was to this corporation that all the assets and liabilities of the partnership and the Farris Industrial Corporation were transferred when the partnership was dissolved on November 3, 1946. Considering this fact, together with the admitted intention that the partnership and the other corporation were set up for tax purposes, specifically to avoid an excess profits tax, it is clear that at no time did the appellant intend his wife to have a half interest in the properties in question. She on her part, up until the time of the marital difficulties, had fully cooperated and acquiesced in all these transactions. She attended the meeting at which their respective rights in the partnership were determined and did not dispute the accountant's calculation that the husband's interest in the partnership was valued at $23,931.10 and her interest at $1,446.66. This calculation was arrived at after charging the due credits and debts from the drawing account apparently against the excess of assets over liabilities, but it did not take into account the outstanding liability of the United States Government because it was a contingent claim and this was eventually settled by the corporation at $39,000. She took part in the corporate meeting which passed and ratified all these accounts and she raised no objection for a period of 18 months, and then only after her marriage was wrecked, at which time her actions indicated that she intended to not only abandon her husband but whatever business interest she had in common with him and went to live in Texas taking with her such funds and property to which she had quick access in the amount of approximately $16,000.

At this point the only interest she had in the Farris Engineering Corporation was that represented by the one share of stock which she held against the eight shares of stock held by the appellant and one qualifying share held by her father. While the capital account of the corporation shows she has a half interest in $35,000, this is merely a

bookkeeping transaction and resulted from a transfer of a $25,000 credit on the books of the partnership showed as owing to both the appellant and her. The only explanation of this is the same explanation given why the corporation voted her a $20,000 salary and that is that it was done for the purpose of fortifying the tax position taken with respect to the partnership. If it is urged that this credit represented a balance of accrued and undistributed profit then the answer to that is that the creditors of the partnership could look to this for payment before taking recourse against the partners on their individual personal liability. As to the personal liability this was fixed by their agreement and was to be assumed "in the same proportion as their respective investments" and the proportion was fixed on the dissolution of the partnership. Respondent escaped any personal liability when she agreed the assets should be turned over to the corporation in return for which the corporation would assume the debts of the partnership, and she did this apparently voluntarily even though she knew that on the books of the partnership at that time the entire original investment of $28,000 was credited to her husband. The only interest that the respondent is entitled to in either the Farris Engineering Corporation, the partnership, or the Farris Industrial Corporation is that interest represented by her one share of stock in the Farris Engineering Corporation. The execution of the certificate for this one share of stock was a recognition of her right to that share which is hers and is not now to be surrendered to the appellant.

Therefore the appellants are entitled to the relief prayed for in their complaint and counterclaim and the respondent should be compelled and required to join in the execution of a bill of sale which will formally complete the transfer of the assets of the partnership to the Farris Engineering Corporation, and she should be further required to endorse and transfer her 14 shares of stock in the Farris Industrial Corporation to the Farris Engineering Corporation.

█ As to the cross-appeal of the respondent respecting the $40,000 salary which the Farris Engineering Corporation is paying to the appellant, this does not appear to have the sanction of deliberate corporate action by the proper corporate authority. True, it is the husband who owns the controlling interest in the corporation, but the wife has such an interest as to permit her to object and to raise a question as to the propriety of that amount. As to whether this salary is excessive in the present financial condition of the corporation, this is a question that cannot be answered at this time because the payment of the salary in the present posture of the corporate action is *ultra vires* for lack of proper authority.

The judgment of the trial court is reversed insofar as it attempted to declare that the wife was entitled to a one-half interest in the Farris Engineering Corporation and the Farris Industrial Corporation and is reversed in its holding that the salary of $40,000 paid to the appellant was not excessive. In all other respects it is affirmed.

The record is remanded to the Superior Court, Chancery Division, to be there proceeded with in accordance with the rules and practice of that court, consistent with this opinion.

*For modification*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, BURLING and ACKERSON—5.

*For affirmance in part and reversal in part*—Justice HEHER—1.