**PHARMACEUTICAL SALES AND CONSULTING CORPORATION,**
Plaintiff,

v.

**J.W.S. DELAVAU CO., INC., Defendant.**

**Civil Action No. 95–5961(MLC).**

United States District Court,
D. New Jersey.

July 9, 1999.

Robert Montecallo, Biagiotti, Marino & Montecallo, Hackensack, NJ, for Plaintiff.

Michael Lieberman, Hangley, Aronchick, Segal & Pudlin, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on defendant's motion for leave to file a second amended answer. For the reasons stated, the motion is granted.

### BACKGROUND

The background facts have been set forth in this Court's May 13, 1999 Memorandum Opinion and in the interest of brevity are incorporated by reference herein. Briefly, plaintiff Pharmaceutical Sales and Consulting Corporation ("PSCC") and defendant J.W.S. Delavau, Inc. ("Delavau") entered into a Sales, Consulting and Confidential Disclosure Agreement ("the Agreement") which was executed by the parties on July 1, 1992. The Agreement provided that Delavau was to pay PSCC a commission for sales PSCC brought to Delavau from Lederle Laboratories, Inc. The Agreement was signed by

John Sadlon, as president of PSCC, and on its behalf. PSCC brought this action for breach of contract, alleging that defendant Delavau failed to pay commissions due and owing to PSCC pursuant to the Agreement.

Our prior Opinion addressed the question of whether defendant was entitled to dismissal of the instant lawsuit brought by PSCC based upon the fact that PSCC was neither a de facto nor de jure corporation at the time of the parties' July 1, 1992 Agreement. Defendant's position was that PSCC could not sue for breach of contract if it did not have the capacity to enter into the contract as of the date of the execution of the Agreement, July 1, 1992. In response, plaintiff maintained that PSCC could sue on the Agreement, based upon the fact that it was a de facto corporation, or alternatively by virtue of the doctrine of corporation by estoppel.

The parties having agreed that PSCC was not a de jure corporation at the time of the Agreement, we focused our attention on whether PSCC could establish de facto status and thus avoid dismissal on that basis. The Court held that assuming *arguendo* that the doctrine of de facto corporation was still viable under New Jersey law after the enactment of New Jersey's Model Business Corporation Act ("the Act") in 1968, the facts of this case demonstrated that PSCC was not a de facto corporation at the time of the Agreement. We reached that conclusion based upon the undisputed fact that Sadlon did not attempt to incorporate PSCC until August 14, 1992, which was approximately 1½ months after the parties entered into the Agreement.

Despite this finding, we determined that defendant was not entitled to dismissal of this lawsuit on that basis. Instead, we applied the doctrine of corporation by estoppel such that defendant would be estopped from relying upon plaintiff's defective corporate status as a basis for dismissal of this lawsuit. Accordingly, we denied defendant's motion to dismiss.

The instant motion asks us to address a different, albeit related question to that presented by the prior motion to dismiss. Specifically, now that we have determined that defendant is not entitled to dismissal of the lawsuit against it solely based upon PSCC's lack of corporate status, we must decide whether defendant may add two individuals, namely Jack Sadlon and Laura Micelli, as counterclaim defendants in this suit. Defendant seeks to add these additional defendants because such an amendment would permit Delavau to recover from PSCC and/or the individuals should the Court conclude that PSCC is liable to Delavau for the misconduct alleged in Delavau's counterclaims.

Delavau's proposed counterclaims which seek money damages are premised upon allegations of (1) breach of contract; (2) negligent misrepresentation; and (3) intentional misrepresentation and fraud.[1] (*See* Prop. Sec. Am. Answer, Affirmative Defenses and Counterclaim.) The thrust of defendant's argument is that if the Court has determined that at least as of the date of the Agreement, July 1, 1992, PSCC was not a de facto corporation, then Delavau should be entitled to recover damages from PSCC, Sadlon or Micelli on the counterclaims. Defendant's argument is based upon three premises, each of which must be examined.

First, because our prior Memorandum Opinion found that there was no de facto corporation as of the date of the parties' July 1, 1992 Agreement, Delavau believes that our holding would apply equally to Delavau's counterclaims, such that Sadlon and Micelli could not hide behind PSCC's nonexistent corporate status and avoid potential personal liability on the counterclaims. Delavau makes this argument despite the fact that the counterclaims are

---

1. Defendant/counterclaimant also seeks a declaratory judgment, (*see* Prop. Sec. Am. Answer and Counterclaim, Count 1), and rescission. (*Id.* Count 5.)

premised in part upon conduct which occurred after August 14, 1992, the date that Sadlon has certified that he attempted to incorporate PSCC. (*See* Certif. of John Sadlon in Opp'n to Mot. to Dismiss ¶ 2.)

Second, assuming that Delavau's first premise is correct and the Court determines that Sadlon and Micelli are not entitled to rely upon PSCC's corporate status as of the date of the conduct which forms the basis of the counterclaims, Delavau's argument is that the Court would then be required to treat PSCC as a partnership. Under New Jersey's Uniform Partnership Law, N.J.S.A. § 42:1–15(a), the Court would be required to impose joint and several liability upon all partners to the partnership.

From this second premise, Delavau reaches its conclusion that both Sadlon and Micelli could be individually liable as partners of PSCC if the Court awards damages on Delavau's counterclaims. In particular, as to the liability of Micelli, Delavau argues that she shared in the profits of PSCC and is therefore considered a partner under New Jersey law, even if she was never so designated. Moreover, under this theory of individual liability, the fact that she was not a purported shareholder of PSCC is irrelevant.[2]

Putting these arguments and assumptions in context, defendant argues that the liberal standard pertaining to the amendment of pleadings should apply so that defendant may amend its answer to assert counterclaims against Micelli and Sadlon individually. Defendant maintains that there has been no undue delay, and that any prejudice which results from the amendment is through the fault of the plaintiff, Micelli and Sadlon rather than defendant.

PSCC argues in opposition to the motion that this Court's discussion of the contours of the corporation by estoppel concept applies equally to defendant's ability to amend the counterclaim at this juncture. (*See* Pl.'s Ltr. Br. in Opp'n.) PSCC maintains that it would be unfair to impose personal liability upon Micelli and Sadlon because Delavau believed at all times that it was dealing with a bonafide corporation. (*Id.*) Moreover, PSCC points out that if we were to permit amendment, it would delay the proceedings in this matter because Sadlon and Micelli would likely have to retain separate counsel.

### DISCUSSION

The procedural posture of this case demonstrates that the instant motion, which is styled as a "motion for leave to file a second amended answer," must be treated as a motion to amend the final pretrial order. The final pretrial order in this case was filed in this Court on October 1, 1997. Federal Rule of Civil Procedure 16(e) prescribes the role of the pretrial order and the·general basis for its modification:

> (e) Pretrial Orders. After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice.

Fed.R.Civ.P. 16(e); *see also Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1194 (3d Cir.1987) (holding that a motion to amend a pretrial order "shall be permitted only to prevent injustice"); *Leonen v. Johns–Manville Corp.*, No. 82–2684, 1989 WL 5819, at *2 (D.N.J. Jan.23, 1989) ("In the case of final pretrial orders, the standard is ... stringent, and final pretrial orders are binding on the parties in the absence of a showing of manifest injustice."). The moving party has the burden to demonstrate that manifest injustice will result without amendment and that the moving party had a "compelling reason" why it did not seek to amend before trial.

---

**2.** We note that there appears to be some factual dispute as to the exact nature of Micelli's interest in PSCC. We cannot resolve that factual dispute at this juncture.

*Petree,* 831 F.2d at 1194; *see also Leonen,* 1989 WL 5819, at *2 ("[T]he burden of showing that manifest injustice would result falls squarely on the moving party.") (quotations omitted). It is equally clear that the final pretrial order entered in a civil case supercedes all prior pleadings. *Price v. Inland Oil Co.,* 646 F.2d 90, 95 (3d Cir.1981) (stating that a pretrial order "supercedes the pleadings and directs the future course of the action"); *Lithuanian Commerce Corp. v. Sara Lee Hosiery,* 179 F.R.D. 450, 482 (D.N.J.1998).

If the moving party has not demonstrated that manifest injustice will result without amendment, then "[i]t is within the district court's 'discretionary power' to allow for amendment of a pretrial order." *See Daily v. Hyster Co.,* No. 87–1509, 1990 WL 250528, at *2 (D.N.J. Dec.21, 1990) (Wolin, J.); *see also Joy Mfg. Co. v. Sola Basic Indus., Inc.,* 697 F.2d 104, 109 (3d Cir.1982). In exercising their discretion, the Third Circuit has advised the district courts in this circuit to consider "the prejudice or surprise in fact of the nonmoving party, and the ability of that party to cure the prejudice[,]" among other factors. *Beissel v. Pittsburgh & Lake Erie R.R. Co.,* 801 F.2d 143, 150 (3d Cir.1986); *Berroyer v. Hertz,* 672 F.2d 334, 338 (3d Cir. 1982); *Joy Mfg. Co.,* 697 F.2d at 109. Given the procedural posture of this litigation, we must analyze defendant's application under the standard set forth in Rule 16(e).

Prior to evaluating whether defendant has demonstrated to the Court that manifest injustice will result if the Court does not permit the amendment, in view of the nature of the amendment sought, we must address a preliminary question. Specifically, we must determine whether, under New Jersey law, defendant/ counterclaimant has presented a sufficient legal basis upon which this Court could impose joint and several liability upon Sadlon and Micelli for any damages awarded to defendant on its counterclaims asserted in this action against PSCC. *See Petree,* 831 F.2d at 1192 (noting that district court denied motion to amend pretrial order where plaintiff attempted to assert new claim on eve of trial which was without support in Pennsylvania law).

We begin with Delavau's initial legal assumption, namely, that Sadlon and Micelli may be held personally liable on the counterclaims based upon the fact that this Court has determined that as of the date of the parties' contract on July 1, 1992, there was no de facto corporation. Delavau's argument in this regard ignores the fact that its counterclaims against PSCC are based upon actions which occurred both prior to, and after the execution of, the parties' July 1, 1992 Agreement. In this regard, the breach of contract, negligent misrepresentation and intentional misrepresentation/fraud counterclaims all assert as part of their factual predicate PSCC's business relations with a company named TestPak, which allegedly occurred from in or about 1991 through 1995.[3] Our prior ruling was based upon the date of the parties' contract because that was the operative date for determining whether plaintiff had capacity to enter into the July

---

**3.** Delavau's intentional and negligent misrepresentation claims asserted in the proposed amended pleading against PSCC, Sadlon and/or Micelli's are based upon their conduct in brokering sales of products of another corporation, TestPak, to Lederle. This conduct allegedly occurred between 1992 and 1995. (*See* Prop. Sec. Am. Ans. & Counterclaim ¶ 28.) In addition, Delavau states that the 1992 Agreement was breached by PSCC's decision to contract with TestPak. (*Id.* ¶¶ 40, 41) The proposed pleading alleges that PSCC's contracts with TestPak were executed in 1991 and sometime after July 1992. (*Id.* ¶¶ 25, 26.) The negligent and intentional misrepresentation counterclaims are based upon the alleged failure to disclose PSCC's contractual relationship with TestPak (both before and after the execution of the July 1992 Agreement between PSCC and Delavau), PSCC's brokering efforts on TestPak's behalf (which allegedly occurred post–1992), and commissions earned as a result of PSCC's contractual relationship with TestPak. (*See id.* ¶¶ 44, 48.)

1, 1992 Agreement, which in turn formed the basis for PSCC's breach of contract claim against Delavau. The date of the parties' Agreement had operative significance because of the nature of the issue presented to the Court for consideration. Again, the question presented was whether PSCC as a corporate entity had capacity to contract at the time of the July 1, 1992 Agreement such that PSCC could sue defendant on that contract.

 Here, the issue presented is whether, with respect to the counterclaims asserted, Sadlon and Micelli may be added as defendants so that they could be individually liable for PSCC's conduct which forms the basis of those counterclaims. Because it appears that the misrepresentation counterclaims are predicated in part upon conduct which occurred after Sadlon's apparent attempt to incorporate PSCC on August 14, 1992, we are now squarely confronted with the issue of whether PSCC was a de facto corporation during the relevant time period.[4] If PSCC was a de facto corporation, it would be inappropriate to impose personal liability upon Sadlon and Micelli individually.[5] *See Cantor v. Sunshine Greenery, Inc.*, 165

N.J.Super. 411, 414–15, 398 A.2d 571, 573 (App.Div.1979) (Appellate Division reversed judgment against individual promoter of defendant Sunshine Greenery, Inc.; court held that "since plaintiffs looked to the corporation for liability on the lease, and since we find that Sunshine Greenery, Inc. had a de facto existence, there can be no personal liability of Brunetti on the theory that he was a promoter.") (citing *Fletcher*, Cyclopedia of Corporations § 215).

Our prior Memorandum Opinion did not rule on the issue of whether the de facto corporation concept was viable under New Jersey law because we did not have to do so in order to reach our conclusion.[6] However, it appears that this motion now requires us to answer that question in order to determine Sadlon and Micelli's potential individual liability in connection with the counterclaims asserted by defendant.

The Court's prior Memorandum Opinion set forth the reasons why it appeared that the de facto corporate concept had been abolished by § 50 of the Model Act, which is codified in New Jersey under N.J.S.A. § 14A:2–7(2). Other courts have found, based upon the same or similar language,

4. We agree with Delavau's logic to the extent that it applies to its breach of contract counterclaim against PSCC, Micelli and Sadlon. In determining whether a plaintiff may pursue a breach of contract claim against an individual rather than the purported corporate entity, the operative time period in terms of determining corporate status appears to be the date of the parties' agreement. *See Cantor v. Sunshine Greenery Inc.*, 165 N.J. Super. 411, 414, 398 A.2d 571, 573 (App.Div.1979) ("This appeal involves the propriety of a personal judgment against defendant ... for breach of a lease between plaintiffs and a corporate entity known as Sunshine Greenery, Inc., and more particularly whether there was a de facto corporation *in existence at the time of the execution of the lease.*").

5. One potential exception would be if the facts warranted the Court to disregard the corporate entity and pierce the corporate veil. *See State, Department of Envtl. Protection (DEP) v. Ventron Corp.*, 94 N.J. 473, 500, 468 A.2d 150 (1983); *Lyon v. Barrett*, 89 N.J. 294,

445 A.2d 1153 (1982). It is only upon proof of fraud or injustice that a court will pierce the corporate veil to impose liability on the corporate principals. *DEP*, 94 N.J. at 500, 468 A.2d at 150. However, that argument was not presented here, and we need not consider it at this time.

6. In particular, we held as follows:

While it appears that the effect of similar versions of the Model Act's § 50 has produced divergent views and significant debate among commentators and courts from other jurisdictions, we need not decide whether § 14A:2–7(2) has abolished the de facto corporate concept in New Jersey at this juncture. Assuming *arguendo* that a would-be corporation could in fact prove its corporate existence by demonstrating that it qualifies as a de facto corporation, the facts of this case demonstrate that PSCC cannot qualify as a de facto corporation because it made no "bona fide" attempt to incorporate.

(Mem. Op. at 11.)

that the state legislature abolished the doctrine of de facto corporation by enacting a counterpart to § 50 of the Model Act. *See Timberline Equip. Co. v. Davenport*, 267 Or. 64, 514 P.2d 1109, 1111 (1973) (interpreting similar language found in Oregon statute, O.R.S. § 57.321, to have abolished de facto corporate concept in Oregon; court did not address whether same language abolished corporation by estoppel, noting that the two concepts are different); *American Vending Servs. v. Morse*, 881 P.2d 917, 923 (Utah Ct.App. 1994) (interpreting analogous provision of Utah's Model Business Corporations Act, § 16–10–51 (now found at § 16–10a–203), said provision being modeled after § 56 of the Model Act, the successor to § 50 of the Model Act); *see also Robertson v. Levy*, 197 A.2d 443, 446–47 (D.C.App.1964) (interpreting identical language found in § 29–921c, now codified at § 29–349, and holding that language abolished the concepts of corporation by estoppel and de facto corporation). Moreover, the Commissioner's Comments appended to this section of N.J.S.A. states that this passage "virtually eliminates the distinction between *de jure* and *de facto* corporations." (Mem. Op. at 9 (citing Commissioners' Comment—1968) (emphasis in original).)

■■■ We conclude that the doctrine of de facto corporate status no longer exists in New Jersey. While we recognize that at least two New Jersey Appellate Division opinions have discussed and/or applied the de facto corporation concept since the codification of the Act,[7] it does not appear that the question of the doctrine's remaining vitality after the enactment of the Act was squarely presented to those courts or addressed in either case. Moreover, while instructive, we are not bound by Appellate Division cases in interpreting state law. *See Fleck v. KDI Sylvan Pools*, 981 F.2d 107, 113 (3d Cir.1992) (noting that we can rely upon decisions from intermediate appellate courts if persuasive, but are not bound to do so, especially where the court is convinced that the state's supreme court would hold otherwise). A federal district court sitting in diversity is faced with the difficult task of predicting how the New Jersey Supreme Court would resolve this issue. *McKenna v. Pacific Rail* Serv., 32 F.3d 820, 825 (3d Cir.1994). We believe that the New Jersey Supreme Court would align itself with those courts which have abolished the de facto corporate concept in view of the language found in the last sentence of § 14A:2–7(2).[8]

■■■ We turn now to the effect of that ruling. Assuming for purposes of this mo-

---

**7.** *See Cantor*, 165 N.J.Super. at 414, 398 A.2d at 573 (citing N.J.S.A. § 14A:2–7(2) for proposition that Sunshine Greenery Inc. was not a de jure corporation as of the date the transaction occurred, but then holding that it was a de facto corporation such that individual could not be held liable); *Trenton Dressed Poultry, Inc. v. Jamson*, 116 N.J.Super. 327, 282 A.2d 405 (App.Div.1971) (court found no de facto corporation and held that trial court improperly dismissed claims against individual defendants). We note parenthetically that both cases were decided at least two decades ago and have not engendered discussion of or reliance upon the de facto corporate concept in recent New Jersey jurisprudence. Moreover, a close reading of *Cantor*, the case upon which plaintiff principally relies, demonstrates that the court relied upon the concepts of corporation by estoppel and de facto corporations interchangeably. *See Cantor*, 165 N.J.Super. at 414–15, 398 A.2d at 573 (noting that plaintiffs are "estopped" from attacking

the legal existence of a corporation collaterally because of a defect in filing in order to impose individual liability when plaintiffs contracted with a corporation with "de facto" status).

**8.** Specifically, that section provides:

14A:2–7. Certificate of Incorporation.
(2) The certificate of incorporation shall be filed in the office of the Secretary of State. The corporate existence shall begin upon the effective date of the certificate, which shall be the date of the filing or such later time, not to exceed 90 days from the date of filing, as may be set forth in the certificate. *Such filing shall be conclusive evidence that all conditions precedent required to be performed by the incorporators have been complied with and, after the corporate existence has begun, that the corporation has been incorporated under this act. …*
N.J.S.A. 14A:2–7(2).

tion the truth of Sadlon's assertion that he mailed his completed certificate of incorporation for filing on August 14, 1992, it is undisputed that the certificate was never filed with the New Jersey Secretary of State. Section 14A:2–7(2) states that the corporate existence shall begin upon the "filing" of the certificate of incorporation; it does not state that the corporate existence begins upon the mailing of the certificate to be filed. Accordingly, we hold that PSCC was not a de facto corporation at the time of the actions which give rise to defendant's misrepresentation counterclaims asserted against PSCC.[9]

The next question is whether, given our ruling that there was no de facto corporation during the relevant time period, defendant should be permitted to amend the pretrial order and assert counterclaims against Sadlon and Micelli individually. Delavau argues that in the absence of a corporation, PSCC should be treated as a partnership and its partners should be held personally liable for PSCC's tortious conduct (i.e., negligent and/or intentional misrepresentation) and alleged breach of contract.[10] Delavau maintains that both Sadlon and Micelli are partners in PSCC. With respect to Micelli, defendant argues that the fact that she was entitled to a share of the profits in PSCC is prima facie evidence that she was a partner in PSCC, and thus should be jointly and severally liable for Sadlon's conduct (while acting on behalf of PSCC).

There is authority in New Jersey which supports the proposition that "[w]hen a corporation de jure or de facto does not exist, persons doing business in an assumed corporate capacity are partners and liable as partners." *Culkin v. Hillside Rest.*, 126 N.J.Eq. 97, 99, 8 A.2d 173, 175 (Ct.Chan.1939); *see also Federal Advertising Corp. v. Hundertmark*, 109 N.J.L. 12, 14, 160 A. 40 (1932) ("When, therefore, the defendants authorized the sign and used the Home Electric Products, Inc., as a name, they in effect were constituting themselves as agents of a nonexisting principal, and became personally liable."). New Jersey's Uniform Partnership law defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." N.J.S.A. § 42:1–6. A partnership is created "when persons join together their money, goods, labor or skill for the purpose of carrying on a trade, profession or business, and where there is community of interest in the profits or losses." *Farris v. Farris*

9. We have also considered PSCC's argument that the doctrine of corporation by estoppel should apply so as to bar any attempt to amend the answer to assert counterclaims against Sadlon and Micelli individually. We agree with Delavau's response and conclude that the corporation by estoppel doctrine does not prevent the amendment sought here. Our prior Memorandum Opinion explained the contours of the corporation by estoppel concept, and noted that its application to a particular case is fact and context driven. In this context, we perceive no basis for applying the doctrine of corporation by estoppel so as to preclude the preliminary step of filing an amended answer and counterclaim against Micelli and Sadlon individually.

10. Defendant relies upon the following provisions of New Jersey's Uniform Partnership Law:

42:1–13. Partnership bound by partner's wrongful act.

Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefore to the same extent as the partner so acting or omitting to act.
N.J.S.A. § 42:1–13. Section 42:1–15 sets forth a partner's potential liability for conduct undertaken in the name of the partnership:
42:1–15 Liability of partners.
Except as provided in subsection c. of this section [which does not apply], all partners are liable:
a. Jointly and severally for everything chargeable to the partnership under R.S. 42:1–13 and R.S. 42:1–14.
b. Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.
N.J.S.A. § 42:1–15.

*Eng'g Corp.,* 7 N.J. 487, 498–99, 81 A.2d 731 (1951).

Under the partnership statute, receipt of a share of profits of a business is prima facie evidence that one is a partner in the business. N.J.S.A. § 42:1–7(4). However, the statute also states that:

> no such inference shall be drawn if such profits were received in payment:
>
> a. As a debt by installments or otherwise,
>
> b. As wages of an employee or rent to a landlord,
>
> c. As an annuity to a widow or representative of a deceased partner,
>
> d. As interest on a loan, though the amount of payment vary [sic] with the profits of the business,
>
> e. As the consideration for the sale of the good-will of a business or other property by installments or otherwise.

*Id.* § 42:1–7(4)(a)–(e). Moreover, the statute further provides that "[t]he sharing of gross returns does not of itself establish a partnership...." *Id.* § 42:1–7(3). Thus, "not every agreement that gives the right to share profits is for all purposes a partnership agreement." *Bloom v. Clara Maass Medical Center,* 295 N.J.Super. 594, 611, 685 A.2d 966, 974 (App.Div.1996) (citing cases).

■ It appears that defendant's motion to amend has support in the relevant case law and statutory authorities. Of course, we cannot determine at this stage of the proceedings the exact nature of PSCC during the relevant time period, i.e., whether it is a partnership or sole proprietorship. Moreover, we will not speculate or make any rulings at this juncture with respect to the role Micelli played in the conduct of PSCC's affairs, and whether or not she should be considered a partner who may be subject to joint and several liability on any judgment in Delavau's favor on the counterclaims. However, defendant has presented the Court with a legal theory which, if supported by the proofs presented at trial, could serve as a basis for imposing personal liability upon Micelli and Sadlon as partners in PSCC.[11]

We wish to make it clear, however, that we express no ultimate opinion as to defendant's ability to hold those individuals liable in connection with the counterclaims. Our opinion today merely permits defendant to file an amended pleading which includes counterclaims against Sadlon and Micelli individually. The determination on the merits of any such claim against these individuals will be made at the time of the Court's final judgment, and will depend upon the proofs which are presented at trial. Suffice it to say at this juncture that defendant has presented a potential theory of individual liability which finds support in the case law and relevant statutory authorities.

■ Having addressed the underlying legal issues raised by the proposed amendment, we must now determine, pursuant to the relevant standard set forth in Rule 16(e), whether the modification of the pretrial order is necessary to prevent "manifest injustice." We answer that question

11. We note parenthetically that even if it is established at trial that Micelli and Sadlon were not partners and PSCC is in fact a sole proprietorship (or was at the time of the conduct at issue), Sadlon could be held personally liable for his conduct which forms the basis for defendant's counterclaims on the theory that he was a promoter engaging in actions on behalf of the not-yet existent corporation, PSCC. It is clear that New Jersey courts have recognized the possibility that individual liability may attach where the promoter acts on behalf of a nonexistent corporation. *See K & J Clayton Holding Corp. v. Keuffel & Esser Co.,* 113 N.J.Super. 50, 272 A.2d 565 (Ch.Div. 1971) (noting that the person who signed agreement as purported president of proposed corporation can be held liable thereon, whether or not corporation later adopts contract); *Trenton Dressed Poultry,* 116 N.J. Super at 328, 282 A.2d at 406 (reversing dismissal of individual defendants where court determined there was no de facto corporation); *cf. Cantor,* 165 N.J.Super. at 414, 398 A.2d at 573 (where Appellate Division determined that de facto corporation existed at the relevant time, trial court erred in imposing personal liability upon promoter).

in the affirmative. It is clear that the facts giving rise to the counterclaimant's potential ability to name Sadlon and Micelli individually did not come to light until the eve of trial. Prior to that time, Delavau relied upon PSCC's representations that it was in fact a duly registered New Jersey corporation. Moreover, the final pretrial order was entered in this case on October 1, 1997, long before PSCC's lack of corporate status became a disputed factual issue. We conclude that manifest injustice would result if the Court did not permit amendment, as it appears that either one or both individuals could be subject to liability on the counterclaims should the court determine the issue of liability in that connection in Delavau's favor. Moreover, in considering the prejudice to the nonmovants, we must note that the need for amendment was precipitated by Sadlon's own conduct in negligently or intentionally failing to procure PSCC's corporate status. Finally, any perceived prejudice to the individual defendants may be cured by affording them an opportunity to retain separate counsel and seek additional discovery if it becomes necessary. Under these circumstances, we find that Delavau has satisfied the standard set forth in Rule 16(e), and we will grant defendant's motion to amend.

An appropriate Order accompanies this Memorandum Opinion.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion,

IT IS on this day of July, 1999 OR-DERED that defendant's motion for leave to file a second amended answer, (no. 62 on the docket), which we treated as a motion to amend the final pretrial order, be and hereby is GRANTED; and

IT IS FURTHER ORDERED that defendant file its Second Amended Answer and Counterclaims with the Court within 10 days of the date of this Order, and effectuate proper service thereof in accordance with the Federal Rules of Civil Procedure; and

IT IS FURTHER ORDERED that after responsive pleadings have been filed, the Clerk shall issue notice of a scheduling conference before Hon. Freda L. Wolfson, U.S.M.J., for the purpose of completing discovery, if any, and filing an Amended Final Pretrial Order.