**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1111-23

KATHERINE ANN WISNIEWSKI
and MICHAEL WISNIEWSKI,

     Plaintiff-Respondents,

v.

COLLEEN CAREY,

     Defendant-Appellant,

and

IAN CAREY,

     Defendant.

_____

Submitted January 14, 2025 – Decided March 17, 2025

Before Judges Gilson, Bishop-Thompson and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2093-20.

Thomas R. King, attorney for appellant.

Heymann & Fletcher, attorneys for respondents (Alix Claps, on the brief).

PER CURIAM

The issue in this appeal is whether the funds plaintiffs Katherine Ann and Michael Wisniewski[1] gave to their daughter defendant Colleen Carey were a loan or a gift. Defendant appeals from an order entered on December 1, 2023, granting summary judgment to plaintiffs and entering a judgment against defendant in the amount of $350,000 plus interest and costs. Based upon our de novo review, we are satisfied the substantive, competent evidence in the record supports the trial court's determination that the funds transferred were a loan and not a gift. We affirm.

I.

Defendant and her spouse, Ian Carey, began divorce proceedings in 2016. They have three young children. Because of financial issues during the divorce proceedings, plaintiffs provided financial support to defendant and the children. These funds were used to pay legal fees and other professional services related to the divorce proceedings, as well as expenses, activities, and education for the

---

[1] Because plaintiffs share a surname, we refer to them by their first names. We intend no disrespect in doing so.

children and defendant's expenses and household bills. Plaintiffs claimed they provided defendant a total of $352,192, which included cash payments and the authorized use of plaintiffs' credit cards by defendant.

Plaintiffs asserted that defendant agreed to repay them once she began receiving spousal support. In 2018, plaintiffs contended they asked defendant to begin making monthly payments toward the funds advanced to her, and indeed, defendant made payments totaling $11,000 in 2018, and $2,000 in 2020.

At defendant's request, in 2016, plaintiffs provided defendant's attorney with a summary of, together with receipts, the funds provided. Plaintiffs created a spreadsheet detailing each expenditure and payment. Plaintiffs maintained the supporting documentation for each expenditure, including credit card statements, receipts from attorneys, forensic accountant invoices, children's expenses, and household bills.

In the matrimonial litigation, defendant certified more than once in her answer to interrogatories that the funds received from plaintiffs were a loan which needed to be repaid. For instance, in one answer, defendant certified:

> [] Defendant's father and mother paid over $300,000 towards the support of [d]efendant and the children of the marriage when [Ian Carey] refused to provide support, tuition, unreimbursed medical and dental, extracurricular activities, etc. in violation of the [c]ourt's [o]rder and for counsel fees and experts' fees .

3

. . . These monies must be repaid to [d]efendant's parents.

In defendant's Case Information Statement (CIS), she certified to liabilities relative to her parents: (1) $12,500 "monies borrowed from parents to pay attorney's fees"; and (2) $7,500 "monies borrowed from parents and friends for living expenses." Defendant also listed $500,000 used to purchase the marital residence as a "loan from [d]efendant's parents to purchase home." In a separate lawsuit,[2] plaintiffs sought repayment of approximately $430,000 they provided to defendant and Carey before and during the beginning of their marriage to be used toward the purchase of a home. However, in a March 12, 2020 order, the trial court granted Carey's motion for summary judgment, finding that the transfer of funds to Carey and defendant were a gift and not a loan.

In October 2020, plaintiffs filed a complaint in Law Division seeking a judgment for the balance of the funds owed. In a July 8, 2021 order, Carey was voluntarily dismissed from the Law Division case.

---

[2] MRS-C-95-18.

In 2021, defendant and Carey sold the marital residence. Defendant received approximately $350,000 from the sale proceeds in equitable distribution, which she does not dispute.

Plaintiffs filed a motion for summary judgment on February 24, 2023. On December 1, 2023, the court granted plaintiffs' motion for summary judgment, having found no material dispute that the funds were a loan and not a gift. As required by our Supreme Court's decision in Bhagat, the court concluded that there was no evidence of donative intent. Bhagat v. Bhagat, 217 N.J. 22, 40 (2014). Rather, the court explained, defendant's "clear statements under oath," acknowledge the funds were a loan. The court also noted the draft agreement in July 2018 further supported the lack of donative intent. This appeal follows.

## II.

We review a trial court's summary judgment decision de novo. DeSimone v. Springpoint Sr. Living, Inc., 256 N.J. 172, 180 (2024) (citing Samolyk v. Berthe, 251 N.J. 73, 78 (2022)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13, (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We "accord no 'special deference' to the 'trial court's interpretation of

the law and the legal consequences that flow from established facts.'" Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414-15 (2018) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

In the context of a transfer of property from a parent to a child, our Supreme Court has delineated "the elements of a valid inter vivos gift and the nature and measure of the proof required to rebut the presumption of such a gift." Bhagat, 217 N.J. at 40. Those three elements are: (1) actual or constructive delivery; (2) donative intent; and (3) acceptance. Ibid. In the case of a transfer from a parent to a child, a rebuttable "presumption arises that the transfer is a gift." Id. at 41 (citing Pascale v. Pascale, 113 N.J. 20, 29 (1988)). This presumption can be overcome by clear and convincing evidence of a contrary intent. Id. at 42.

III.

Defendant contends the trial court erred in granting summary judgment: (1) by relying on plaintiffs' summary of expenditures without the underlying proofs to support the expenditures; (2) by improperly relying on defendant's CIS in the ongoing divorce matter and the "after the fact" draft agreement; (3) by failing to address the "necessary factors" in determining whether the

payments were a loan or gift; and (4) in awarding fees. Having reviewed the record de novo and giving defendant, the party opposing summary judgment, the benefit of every favorable inference, we discern no error in the trial court's decision to grant summary judgment.

Here, the trial court found no dispute that defendant received more than $350,000 from plaintiffs. Defendant did not challenge the accuracy of the spreadsheet or request proof of those payments or the supporting documentation. Moreover, defendant recognized that a summary of voluminous documents is permitted pursuant to N.J.R.E. 1006. Thus, the trial court did not err in concluding that defendant's receipt of those funds was not in dispute.

Defendant's primary argument is that the trial court erred by relying on defendant's statements in the CIS and answers to interrogatories she submitted in the matrimonial action to find that the funds were a loan and not a gift. Defendant further argues that the court failed to consider plaintiffs' affirmative statements in an email stating no expectation of repayment.

Here, defendant admitted in both her CIS and answers to interrogatories in the matrimonial action that the monies were a loan from her parents and not

a gift. In opposing plaintiff's summary judgment motion, defendant did not deny making those admissions under oath nor did she dispute their accuracy.

Defendant mischaracterizes Michael's statements in an email dated October 17, 2016. In this email, Michael stated he was continuing to work on a "financial spreadsheet," and explained that as of the "one year mark" they have spent $200,000. Defendant's assertion that Michael acknowledged having no expectation of being reimbursed relates to the following portion of the email:

> That Pop Pop is not counting on getting back, at all
>
> In fact, based on the way things are progressing,
> at this point Pop Pop is not counting on getting anything
> back
>
> at least not in the immediate future.

These statements more accurately reflect Michael's opinion that repayment was not likely to be forthcoming soon, if at all, and not as defendant contends, a clear expression of the funds being a gift. Other than this communication, the record is devoid of any communications stating that the funds are a gift and not a loan.

Next, defendant contends that the trial court incorrectly applied the doctrine of collateral estoppel. This contention is misplaced. The trial court did not expressly state its reliance on the doctrine of collateral estoppel as legal

authority for relying on defendant's prior statements.  However, under these circumstances, the doctrine of judicial estoppel, as opposed to collateral estoppel, "should be invoked only 'when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'"  Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 608 (App. Div. 2000) (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3rd Cir. 1996)).

Nonetheless, "a party seeking to rebut the presumption [of a gift] may also adduce proof of statements by the parties concerning the purpose and effect of the transfer."  Bhagat, 217 N.J. at 47.  Defendant offered no competent reliable evidence to suggest that these prior certified statements were untrue or otherwise created a genuine factual dispute as to their veracity.  To allow defendant to assert in the divorce proceedings that the funds were a loan but permit her to take a contrary position in this civil litigation would serve only to undermine "the integrity of the judicial process."  Kimball Int'l, Inc., 334 N.J. Super. at 608.  Thus, we are satisfied the trial court did not err in relying on defendant's certified statements to find the funds were a loan from her parents.

The trial court also relied upon a July 17, 2018 draft agreement to overcome the presumption that these funds were a loan and not a gift.  This

document states, in relevant part, that defendant agrees to repay plaintiffs and "will pay $1,000 per month the first of each month." The agreement goes on to state that defendant "has made payments totaling $2,500; April 19 $1,000; June 7 $1,000 and July 10 $500." Further, the document states that plaintiffs "have created a spreadsheet summarizing the expenditures along with receipts and credit card statements."

Defendant does not dispute that she made repayments in 2018 as reflected in this agreement, and later made additional payments totaling $2,000 in 2020. This agreement was drafted by plaintiffs contemporaneously with the repayments being made by defendant, and during that time, she continued to receive funds from plaintiffs. Moreover, "the subsequent conduct of [a] part[y] may be given in evidence to corroborate the inference drawn from prior and contemporaneous circumstances." Bhagat, 217 N.J. at 43 (quoting Weisberg v. Koprowski, 17 N.J. 362, 374 (1955)).

"[P]roofs advanced to rebut the presumption of a gift 'must be of facts antecedent to or contemporaneous with the purchase, or so immediately afterwards as to form a part of the res gestae.'" Ibid. (quoting Herbert v. Alvord, 75 N.J. Eq. 428, 429-30 (Ch. 1909)). As our Supreme Court clarified in Bhagat, "the person seeking to rebut the presumption is limited to evidence antecedent

to, contemporaneous with, or immediately following the transfer." Id. at 47. Thus, to the extent that the court relied on this unexecuted agreement to discern plaintiffs' intent, we discern no error.

The trial court properly focused on the main issue in dispute according the controlling caselaw: donative intent, that is, whether plaintiffs intended to give the funds to defendant. Id. at 40. There was no dispute regarding the two other elements of a valid and irrevocable gift: actual or constructive delivery—plaintiffs provided the funds to defendant; and acceptance—defendant received the funds and used them to support herself and the children during the divorce proceedings. Defendant's undisputed, certified admissions and actions in making payments provide "clear, cogent and persuasive" evidence as the trial court found, demonstrating a lack of donative intent. Id. at 41 (quoting Farris v. Farris Eng'g Corp., 7 N.J. 487, 501 (1951)).

Finally, defendant argues that the trial court erred in awarding attorney's fees. There is nothing in the court's decision or order stating that the judgment included an award of attorney's fees. The total award of $350,000 only included interest and costs. This assertion is without merit.

11

IV.

Based upon our de novo review, viewing the evidence in the record in a light most favorable to defendant, we are satisfied that the substantive, competent evidence in the record demonstrates plaintiffs are entitled to a judgment as a matter of law. We agree with the trial court's decision granting summary judgment to plaintiffs because there were no genuine issues of fact as to the elements necessary to establish an inter vivos gift.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-1111-23