760 A.2d 794 (2000)
334 N.J. Super. 596
KIMBALL INTERNATIONAL, INC., Plaintiff-Appellant/Cross-Respondent,
v.
NORTHFIELD METAL PRODUCTS, as successor in interest to Faultless Metal Products, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 2000.
Decided October 24, 2000.
*796 Barry A. Weisberg, Woodbridge, argued the cause for appellant/cross-respondent (Hlavenka and Weisberg, attorneys; Mr. Weisberg, on the brief).
John C. Simons, New Brunswick, argued the cause for respondent/cross-appellant (Hoagland, Longo, Moran, Dunst & Doukas, attorneys; Mr. Simons, of counsel and on the brief).
Before Judges SKILLMAN, WECKER and LESEMANN.
*795 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
Plaintiff Kimball International, Inc. (Kimball) manufactures office chairs. Defendant Northfield Metal Products (Northfield) is the successor in interest of a company that supplied a component part for Kimball's chairs described as a control mechanism.
On February 24, 1994, Reginald Baker was injured at the premises of his employer, Sea Land Services, Inc. (Sea Land), as a result of the collapse of a Kimball chair. Baker subsequently brought suit against Kimball.
Baker retained an engineering expert, Norman Goldstein, who provided a report *797 which concluded that the chair collapsed because two "forward tabs" in the control mechanism broke and that the "tabs should not have failed." Kimball retained an engineering expert, Joseph R. Petrella, who provided a report which concluded that "the chair occupied by Mr. Baker at the time of his accident was structurally impaired by either misuse or improper maintenance ... and not as a consequence of a design or construction inadequacy."
Baker learned during discovery that Northfield was the supplier of the alleged defective component part of the Kimball chair. Consequently, Baker moved to file an amended complaint adding Northfield as a defendant in his action. Kimball joined in the motion. The trial court denied the motion because a trial date was imminent, but it preserved the right of both Baker and Kimball to bring a separate action against Northfield.
Shortly thereafter, Kimball filed this action against Northfield. Kimball's three count complaint included claims for contribution and indemnification.
Subsequently, Baker and Kimball settled the underlying personal injury action for $250,000. In addition, Kimball agreed to assign Baker a partial interest in the action it had filed against Northfield. The agreement provided that Baker would be entitled to the first $15,000 of any recovery against Northfield plus 50% of the balance. Baker was also given the right to control the prosecution of the action.
After a period for discovery, Northfield filed a motion for summary judgment, arguing among other things that the settlement agreement between Baker and Kimball had extinguished Kimball's claims for contribution and indemnification. Northfield also argued that Kimball's action should be dismissed because Kimball had failed to preserve the alleged defective chair that caused Baker's injuries.
The trial court granted the part of Northfield's motion which sought dismissal of Kimball's contribution claim, but denied the motion in all other respects.
Northfield subsequently filed a second motion for summary judgment. In support of this motion, Northfield argued that Kimball was precluded by the doctrine of judicial estoppel from presenting evidence that the component part of the chair supplied by Northfield was defective because Kimball had taken the position in the Baker personal injury action that the chair was not defective. Northfield also argued that Kimball's complaint should be dismissed because the part of the settlement agreement between Baker and Kimball which assigned Baker a partial interest in Kimball's claim against Northfield was "void as against public policy." In addition, Northfield argued that Kimball's claim for contractual indemnification should be dismissed because there was no evidence to support the claim.
The trial court concluded in a written opinion that the assignment to Baker of a partial interest in Kimball's claim against Northfield does not violate public policy. The court also concluded that Kimball has a viable claim for contractual indemnification. However, the court held that Kimball was barred by the doctrine of judicial estoppel from presenting evidence that the component part supplied by Northfield was defective because it had taken a contrary position in defending Baker's personal injury action. Accordingly, the court granted Northfield's motion for summary judgment.
Kimball appeals from the summary judgment, arguing that the doctrine of judicial estoppel does not preclude it from pursuing a claim for indemnification against Northfield simply because it took the position in defending the Baker personal injury action that neither its chair nor Northfield's component part were defective. Kimball does not appeal from the part of the first summary judgment *798 order which dismissed its contribution claim.
Northfield has filed a cross appeal, under which it presents alternative arguments in support of the summary judgment in its favor.[1] Northfield argues that the assignment to Baker of a partial interest in Kimball's indemnification action was invalid and thus the action must be dismissed. Northfield also argues that Kimball cannot maintain a claim for contractual indemnification, and that Kimball's complaint must be dismissed because Northfield was prejudiced by the destruction of the chair.
We conclude that the trial court erred in holding that Kimball is precluded by the doctrine of judicial estoppel from presenting evidence that the component part of the chair supplied by Northfield was defective. We also conclude that the partial assignment of Kimball's indemnification action was not invalid, and that Kimball is not foreclosed from maintaining this action because of the destruction of the chair. Accordingly, we reverse the summary judgment in favor of Northfield and remand the case for trial.
In addition, because Kimball acknowledged at oral argument that in the absence of any express contractual provision for indemnification, the elements of its claims for contractual and common law indemnification are the same, Kimball only has a single indemnification claim and that claim is for common law indemnity. Therefore, the trial court should submit only that claim to the jury.

I
Initially, we note that the order from which this appeal has been taken does not appear to be a final judgment. That order states:
1. [Northfield's] motion for summary judgment based upon the settlement agreement between Baker and Kimball being violative of public policy is denied:
2. [Northfield's] motion for summary judgment based upon lack of proofs supporting a claim of contractual indemnification is denied as there exists a fact issue as to whether the component parts supplied to Kimball in making the chair was "merchantable";
3. Kimball is prohibited from introducing any evidence ... that there was any defect with the chair or any defect with the component part manufactured by [Northfield] based upon the doctrine of judicial estoppel; as such [Northfield's] motion for summary judgment on these grounds is granted.
Kimball appeals from paragraph three of the order, which prohibits it from introducing evidence "that there was ... any defect with the component part manufactured by [Northfield] based upon the doctrine of judicial estoppel." Northfield cross appeals from paragraphs one and two, which denied its motion for summary judgment on the grounds that the settlement agreement between Kimball and Baker was violative of public policy and that Kimball did not present any evidential basis for a contractual indemnification claim.
Upon inquiry from this court, the parties indicated that even though the order from which this appeal has been taken appears to be simply an in limine order barring the admission of evidence that the component part manufactured by Northfield was defective and denying Northfield's motion for summary judgment on other grounds, the order is tantamount to a final judgment dismissing Kimball's complaint because proof that the component part was defective is an essential element of Kimball's indemnification claim. In particular, Kimball's counsel stipulated at oral argument that to prevail on its indemnification claim, it must show that Northfield's component part was defective. Consequently, the parties indicated that the order *799 was not intended, as it appears on its face, to be simply a partial summary judgment preliminary to a trial but rather a final adjudication dismissing all of Kimball's remaining claims.
When a pretrial ruling barring the introduction of evidence effectively forecloses a plaintiff from proving its case, the proper procedure is to dismiss the complaint, preserving the plaintiff's right to appeal the adverse evidentiary ruling. The parties did not follow that course in the present case. However, we are satisfied from our review of the record that Kimball is foreclosed from proving its indemnification claim as a result of the trial court's exclusion of any evidence that Northfield's component part was defective. Thus, as a practical matter, the order from which this appeal has been taken constitutes a final disposition of the case. Accordingly, we treat the order as a final judgment and proceed to consideration of the merits.

II
First, we consider the trial court's conclusion that because, in defending Baker's personal injury action, Kimball took the position that its chair and Northfield's component part were not defective, it is precluded by the doctrine of judicial estoppel from asserting in its indemnification action that Northfield's component part was defective.
The purpose of the judicial estoppel doctrine is to protect "the integrity of the judicial process." Cummings v. Bahr, 295 N.J.Super. 374, 387, 685 A.2d 60 (App. Div.1996). A threat to the integrity of the judicial system sufficient to invoke the judicial estoppel doctrine only arises when a party advocates a position contrary to a position it successfully asserted in the same or a prior proceeding. Chattin v. Cape May Greene, Inc., 243 N.J.Super. 590, 620, 581 A.2d 91 (App.Div.1990), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991); Brown v. Allied Plumbing & Heating Co., 129 N.J.L. 442, 446, 30 A.2d 290 (Sup.Ct.), aff'd, 130 N.J.L. 487, 33 A.2d 813 (E. & A. 1943); Bell Atl. Network Servs., Inc. v. P.M. Video Corp., 322 N.J.Super. 74, 95, 730 A.2d 406 (App.Div.), certif. denied, 162 N.J. 130, 741 A.2d 98 (1999).[2] "[T]o be estopped [a party must] have convinced the court to accept its position in the earlier litigation. A party is not bound to a position it unsuccessfully maintained." In re Cassidy, 892 F.2d 637, 641 (7th Cir.), cert. denied, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). "The principle is that if you prevail in Suit # 1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events."[3]Eagle Found., Inc. v. Dole, 813 F.2d 798, 810 (7th Cir.1987). Consequently, "[a]bsent judicial acceptance of the inconsistent position, application of [judicial estoppel] is unwarranted because no risk of inconsistent results exists. Thus, the integrity of the judicial process is unaffected; the perception that either the first or *800 second court was misled is not present." Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir.1982); see also In re Coastal Plains, Inc., 179 F.3d 197, 206-07 (5th Cir.1999), cert. denied, ___ U.S. ___, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000); Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp., 910 F.2d 1540, 1547-48 (7th Cir.1990); see generally, Boyers, supra, 80 Nw.U. L.Rev. at 1255-58.
Because the doctrine of judicial estoppel only applies when a court has accepted a party's position, a party ordinarily is not barred from taking an inconsistent position in successive litigation if the first action was concluded by a settlement. Bates v. Long Island R.R. Co., supra, 997 F.2d at 1038; Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1219 (6th Cir.1990); Edwards, supra, 690 F.2d at 599; Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C.Cir.1980); City of Kingsport, Tenn. v. Steel & Roof Structure, Inc., 500 F.2d 617, 620 (6th Cir. 1974); see generally, Boyers, supra, 80 Nw.U. L.Rev. at 1267. As the court explained in Konstantinidis, "[a] settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel." 626 F.2d at 939.
It is also generally recognized that judicial estoppel is an "extraordinary remedy," which should be invoked only "when a party's inconsistent behavior will otherwise result in a miscarriage of justice." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir.1996) (quoting Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 424 (3d Cir.) (Stapleton, J., dissenting), cert. denied, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988)); see also Teledyne Indus., Inc., supra, 911 F.2d at 1218 ("Judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement."). Thus, as with other claim and issue preclusion doctrines, judicial estoppel should be invoked only in those circumstances required to serve its stated purpose, which is to protect the integrity of the judicial process.[4]
Applying these principles, Kimball is not precluded from maintaining an indemnification claim against Northfield simply because it took the position in defending Baker's personal injury action that neither its chair nor Northfield's component part were defective. Because Baker's claim was settled, there was no finding in that action that the chair and its component parts were not defective. Thus, Kimball's maintenance of this indemnification action poses "no risk of inconsistent results" which could create a "perception" that the court in the first action or in this action "was misled." Edwards, supra, 690 F.2d at 599. Moreover, because Kimball paid $250,000 to settle Baker's claim, it cannot be concluded that Kimball "succeeded in maintaining [the] position" that the chair was not defective. Chattin, supra, 243 N.J.Super. at 620, 581 A.2d 91 (quoting Brown v. Allied Plumbing & Heating Co., supra, 129 N.J.L. at 446, 30 A.2d 290).
Relying upon dictum in Cummings, supra, that "[p]rior success does *801 not mean that a party prevailed in the underlying action, it only means that the party was allowed by the court to maintain the position,"[5] 295 N.J.Super. at 387, 685 A.2d 60, Northfield argues that Kimball is judicially estopped from maintaining that Northfield's component part was defective, because Kimball relied in the Baker action upon the Petrella expert report, which concluded that the chair was not defective. However, we see no indication that the trial court in the Baker action "allowed [Kimball] to maintain [that] position"; Kimball apparently just submitted the Petrella report to Baker as an amendment to its answers to interrogatories. More importantly, even if Kimball had been required to obtain leave of the court to submit its amended answers to interrogatories, this would have been a purely procedural ruling necessitated by the late filing of the amendment rather than a substantive decision that the chair was not defective, such as would be required to conclude that Kimball had "succeeded in maintaining that position." Chattin, supra, 243 N.J.Super. at 620, 581 A.2d 91. If a court has not accepted a litigant's prior position, there is no threat to the integrity of the judicial system in allowing the litigant to maintain an inconsistent position in subsequent litigation or at a later stage of the same litigation, and thus the doctrine of judicial estoppel does not apply. See Edwards, supra, 690 F.2d at 599; Konstantinidis, supra, 626 F.2d at 939.
It is significant that if the trial court in the Baker action had granted Baker's motion to join Northfield as a defendant, Kimball undoubtedly would have filed a cross claim for contribution and/or indemnification. In that event, Kimball probably would have presented its expert to testify that the chair was not defective, but also would have argued in summation that even if the jury found the chair to be defective, it should find that the source of the defect was Northfield's component part. Reliance upon such alternative positions is a common and accepted form of defense in personal injury litigation. See Cummings, supra, 295 N.J.Super. at 386, 685 A.2d 60. We perceive no practical difference between the assertion of such alternative positions in a single action, and Kimball first taking the position in the Baker action that the chair was not defective, and then, after paying a substantial amount to settle Baker's claim, asserting in this action that the chair was defective and that the source of the defect was Northfield's component part.
Moreover, if the Baker action had gone to trial without joinder of Northfield, and the jury had returned a verdict in Baker's favor, Kimball could have maintained an indemnification action against Northfield even though Kimball had presented evidence in the personal injury action that its chair and Northfield's component part were not defective, because the jury's verdict in Baker's favor would preclude a finding that Kimball successfully asserted that position. The result should not be different simply because the Baker action was concluded by a settlement rather than being tried, since that would create a disincentive for a defendant with a potential indemnification claim negotiating a settlement with the injured party.

III
We turn next to Northfield's alternative argument that Kimball is precluded from maintaining its indemnification claim *802 against Northfield because it assigned Baker a partial interest in the claim and the right to prosecute this action. Northfield argues that this assignment constitutes an "impermissible assignment of a tort claim," and is contrary to public policy. Northfield also argues that as a result of the assignment, this action is now barred by the statute of limitations.
Preliminarily, we note that Northfield simply assumes, without citation to any supporting authority, that if Kimball's assignment to Baker were found to be invalid, Northfield would be entitled to a dismissal of the complaint. However, we see no reason why a declaration of invalidity of the assignment would preclude Kimball from continuing to prosecute the action itself. Kimball filed its complaint before assigning a partial interest to Baker, and the validity of Kimball's indemnification claim does not turn on whether Baker is entitled to share in the recovery or control prosecution of the action. In any event, there is no need to pursue this issue further, because we are satisfied that Kimball's assignment to Baker is valid.
The linchpin of Northfield's argument that Kimball's assignment to Baker is invalid is the rule that "a claim for damages in tort for personal injuries cannot be made the subject of assignment before judgment." DiTolvo v. DiTolvo, 131 N.J.Super. 72, 79, 328 A.2d 625 (App.Div. 1974). The essential purpose of this prohibition is "to prevent unscrupulous strangers to an occurrence from preying on the deprived circumstances of an injured person." Caldwell v. Ogden Sea Transp., Inc., 618 F.2d 1037, 1048 (4th Cir.1980).
Except for this prohibition against the assignment of tort claims, a party is generally allowed to assign a claim for money damages. N.J.S.A. 2A:25-1 provides that "all choses in action arising on contract shall be assignable." Our courts have broadly construed this statutory provision. In Hartford Accident & Indem. Co. v. Benevento, 133 N.J.L. 315, 322, 44 A.2d 97 (E. & A.1945), the Court held that a bank's claim against a bookmaker for money he received from a teller knowing that the teller had embezzled the money was assignable under the predecessor to N.J.S.A. 2A:25-1. The court characterized the bank's claim as "quasi-contractual" in nature, based on "the fiction of an implied promise to prevent one's inequitable enrichment at the expense of another...."[6]Ibid. In In re Will of Gardner, 215 N.J.Super. 578, 586, 522 A.2d 492 (App.Div.1987), we held that a right to prosecute a claim in a probate action is "a chose in action made specifically assignable under N.J.S.A. 2A:25-1." Most relevant to this case, in Werrmann v. Aratusa, Ltd., 266 N.J.Super. 471, 476, 630 A.2d 302 (App.Div.1993), we stated that a person injured in a restaurant who obtained a default judgment against the restaurant owner could have obtained an assignment of the owner's claim against an insurance *803 broker for negligently failing to renew its liability policy, "and pursued that claim as an assignee" under N.J.S.A. 2A:25-1.
Based on this expansive view of the assignability of claims for money damages, we conclude that Kimball's indemnification claim was assignable. In George M. Brewster & Son v. Catalytic Constr. Co., 17 N.J. 20, 28, 109 A.2d 805 (1954), our Supreme Court stated that "[i]ndemnity arises from contract, express or implied." On another occasion, the Court described "common-law indemnity" as "an equitable doctrine that allows a court to shift the cost from one tortfeasor to another." Promaulayko v. Johns Manville Sales Corp., 116 N.J. 505, 511, 562 A.2d 202 (1989). But however the right to indemnity may be characterized, the foundation of Kimball's indemnification claim in this case is the contract under which it purchased Northfield's component part for its office chair. See Harley Davidson Motor Co. v. Advance Die Casting, Inc., 150 N.J. 489, 497-98, 696 A.2d 666 (1997). Therefore, we conclude that Kimball's indemnification claim against Northfield should be viewed as a "chose[ ] in action arising on contract" within the intent of N.J.S.A. 2A:25-1.
Moreover, the public policy underlying the prohibition against the assignment of tort claimspreventing "unscrupulous strangers ... from preying on the deprived circumstances of an injured person," Caldwell, supra, 618 F.2d at 1048, is not implicated in Kimball's partial assignment to Baker, because a manufacturer is not vulnerable to being taken advantage of by persons who traffic in lawsuits. The prohibition against the assignment of tort claims is designed to protect the interests of injured persons, not alleged tortfeasors who may have claims against other alleged tortfeasors. Since the injured person is the very one for whose protection the rule against the assignment of tort claims was designed, it would be anomalous to invoke this rule to bar the assignment of an indemnification claim to that person. In fact, the assignment to the injured party of an alleged tortfeasor's claim against another alleged tortfeasor may serve the interests of both the injured party and efficient judicial administration by "provid[ing] an additional means of settling the underlying [personal injury] case...." Rubenstein v. Royal Ins. Co. of Am., 45 Mass.App.Ct. 244, 696 N.E.2d 973, 975, rev. denied, 428 Mass. 1105, 702 N.E.2d 813 (1998).
We reject Northfield's argument that the assignment to Baker is contrary to public policy because Baker already has been fully compensated for his injuries. The premise of this argument is that the $250,000 Kimball paid to Baker represents the full value of his claim. However, if Kimball thought that $250,000 was actually the full value of Baker's claim, it is unlikely Kimball would have offered to share the proceeds of any recovery from Northfield as an added inducement to Baker to agree to the settlement. Thus, Kimball's partial assignment of its indemnification claim to Baker should be viewed as simply one component of an overall settlement package. Under that package, Kimball was able to resolve Baker's claim for $250,000 while preserving its right to seek recovery of up to $117,500 of that amount from Northfield without incurring any additional litigation expenses, and Baker was assured a recovery of $250,000 and also afforded the opportunity to obtain an additional $132,500 if Kimball's indemnification claim against Northfield could be proven.[7]
Furthermore, Northfield is not prejudiced by this settlement agreement. Its exposure is limited to the $250,000 Kimball paid to settle Baker's claim and its defense of Kimball's indemnification claim *804 will be the same,[8] regardless of whether Kimball is entitled to the full amount of any recovery or is obligated to share its recovery with Baker. Therefore, such a settlement agreement is not offensive to public policy or unfair to Northfield.
Our conclusion that Kimball's partial assignment to Baker is valid is also supported by decisions of courts in other jurisdictions which have held that similar settlement agreements did not offend public policy. See, e.g., Bush v. Superior Court of Sacramento County, 10 Cal. App.4th 1374, 13 Cal.Rptr.2d 382, 385-87 (1992); Robarts v. Diaco, 581 So.2d 911, 915 (Fla.Dist.Ct.App.), rev. denied, 591 So.2d 183 (Fla.1991); Puckett v. Empire Stove Co., 183 Ill.App.3d 181, 132 Ill.Dec. 110, 539 N.E.2d 420, 427-28 (1989); Rubenstein v. Royal Ins. Co. of Am., supra, 696 N.E.2d at 974-75; Kaplan v. Harco Nat'l Ins. Co., 716 So.2d 673 (Miss.App.), cert. denied, 726 So.2d 594 (Miss.1998).
Northfield's further argument that Kimball's indemnification claim is barred by the statute of limitations because of the partial assignment to Baker is clearly without merit. "[T]he statute of limitations pertaining to a defendant's claim for ... indemnification begins to accrue when the plaintiff recovers a judgment against it." Mettinger v. Globe Slicing Mach. Co., 153 N.J. 371, 387, 709 A.2d 779 (1998). Thus, Kimball's cause of action against Northfield did not accrue until the Baker action was concluded by a settlement. The accrual of that cause of action and the triggering of the limitations period is unaffected by the assignment to Baker of a partial interest in the action. See Puckett v. Empire Stove Co., supra, 132 Ill.Dec. 110, 539 N.E.2d at 427.

IV
Finally, we consider Northfield's argument that Kimball's complaint should be dismissed because of its "failure to preserve the chair that allegedly caused injury to Baker." A review of the facts relevant to this argument demonstrates that it is clearly without merit.
After Baker's accident, his employer, Sea Land, retained the broken chair on its premises. Before Baker filed his complaint against Kimball, his expert, Norman Goldstein, examined and photographed the chair at Sea Land's premises. Subsequent to service of Baker's complaint, Kimball requested Sea Land to make the chair available for inspection. After Sea Land failed to honor this request, Kimball served a subpoena upon Sea Land. When Sea Land still failed to produce the chair, Kimball filed a third party complaint against Sea Land demanding production of the chair for inspection. However, Sea Land obtained a dismissal of the third party complaint based upon a certification which stated that after retaining the chair until "at least, September 1995," it had "inadvertently discarded" the chair. Kimball's expert subsequently prepared his report based in part on photographs of the broken chair taken by Goldstein.
We have held that "a party to civil litigation who negligently loses evidence may be barred from presenting testimony regarding that evidence." Nerney v. Garden State Hosp., 229 N.J.Super. 37, 40, 550 A.2d 1003 (App.Div.1988). However, in this case, it was Sea Land, not Kimball, which negligently discarded the remnants of the chair that caused Baker's accident.
Moreover, even assuming that a plaintiff in an indemnification action could be precluded from presenting evidence because it was dilatory in obtaining inspection of an object in the hands of a third party (a point we find unnecessary to decide, cf. Allis-Chalmers Corp. Prod. Liab. Trust v. Liberty Mut. Ins. Co., 305 N.J.Super. 550, *805 702 A.2d 1336 (App.Div.1997)), there is no evidence of such dilatoriness on the part of Kimball. Once Kimball was served with Baker's complaint, it requested an opportunity to inspect the chair, and when Sea Land failed to honor the request, it issued a subpoena and then filed a third party complaint to obtain the inspection.
In addition, even if Northfield's inability to inspect the chair were attributable to Kimball, Northfield would have to show that it was "substantially prejudiced" in order to be entitled to any relief. Nerney, supra, 229 N.J.Super. at 40-42, 550 A.2d 1003. Northfield failed to present any evidence that its expert would be unable to evaluate the alleged defect in its component part based on the photographs taken by Goldstein, just as Petrella did on Kimball's behalf in the Baker action.
Accordingly, the summary judgment in favor of Northfield is reversed and the case is remanded for trial.
NOTES
[1] We note that a respondent may present alternative arguments for affirmance without filing a cross appeal. Chimes v. Oritani Motor Hotel, Inc., 195 N.J.Super. 435, 443, 480 A.2d 218 (App.Div.1984).
[2] Thus, the statement in Levin v. Robinson, Wayne & La Sala, 246 N.J.Super. 167, 189-90, 586 A.2d 1348 (Law Div.1990), that "no New Jersey court has ever adopted a requirement that a party must `successfully assert' the prior position to be judicially estopped from later asserting a contrary position," is incorrect, and the holding of that opinion that "prior success" is not a prerequisite of judicial estoppel, id. at 188-91, 586 A.2d 1348, is overruled.
[3] A number of courts have held that the doctrine of judicial estoppel only applies to factual positions, and not to assertions of legal conclusions. See, e.g., Folio v. City of Clarksburg, W. Va., 134 F.3d 1211, 1217-18 (4th Cir.1998); Bates v. Long Island R.R. Co., 997 F.2d 1028, 1037-38 (2d Cir.), cert. denied, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993); see generally Rand G. Boyers, Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel, 80 Nw.U. L.Rev. 1244, 1262 (1986). However, a panel of this court has applied the doctrine to an assertion of a legal conclusion. Cummings, supra, 295 N.J.Super. at 387-89, 685 A.2d 60. Because we hold that the doctrine does not apply for other reasons, we have no need to consider this issue.
[4] We note that there has been strong academic criticism of the judicial estoppel doctrine, see Douglas W. Henkin, Comment, Judicial Estoppel-Beating Shields Into Swords and Back Again, 139 U. Pa. L.Rev. 1711 (1991), and that some state and federal courts have completely rejected the doctrine. See, e.g., Konstantinidis, supra, 626 F.2d at 938; Parkinson v. California Co., 233 F.2d 432, 437-38 (10th Cir.1956). Criticism of the doctrine focuses upon the harshness of claim or issue preclusion based solely on a party asserting inconsistent positions, without a showing of prejudice to another party. Sensitive to this criticism, some courts have limited the doctrine's application to cases of "intentional wrongdoing" that may pervert the judicial process. See, e.g., Ryan Operations, G.P., supra, 81 F.3d at 362.
[5] The issue in Cummings was whether in a personal injury action against a landowner, a plaintiff who conceded at earlier stages of the litigation that she occupied the status of a licensee could assert for the first time in a second motion for reconsideration of a summary judgment for defendant that she actually was an invitee. A panel of this court held that the trial court had "correctly applied [Rule ] 4:49-2" in refusing to allow plaintiff to shift her legal theory at that late stage of the litigation. 295 N.J.Super. at 384, 685 A.2d 60. In addition, the court concluded in dictum that "plaintiff's attempt to argue invitee status is [also] barred by judicial estoppel." Id. at 385, 685 A.2d 60.
[6] The court probably resorted to this fiction because it had held in East Orange Lumber Co. v. Christian Feigenspan, 120 N.J.L. 410, 199 A. 778 (Sup.Ct.1938), aff'd o.b., 124 N.J.L. 127, 10 A.2d 732 (E. & A.1940) that a tort claim for damages to personal property is non-assignable. More recent cases have indicated that the non-assignability rule applies only to tort claims for personal injuries. See, e.g., DiTolvo, supra, 131 N.J.Super. at 79, 328 A.2d 625; Berkowitz v. Haigood, 256 N.J.Super. 342, 346, 606 A.2d 1157 (Law Div.1992). But see Village of Ridgewood v. Shell Oil Co., 289 N.J.Super. 181, 195-96, 673 A.2d 300 (App.Div.1996). The limitation of the non-assignability rule to personal injury claims is consistent with the rule in most other jurisdictions which still maintain some restrictions upon the assignability of claims. See Restatement (Second) of Contracts § 317 cmt. c (1981) (observing that "the historic common-law rule that a chose in action could not be assigned has largely disappeared. It remains applicable to some non-contractual rights, particularly claims for damages for personal injury ...."); see generally Andrea G. Nadel, Annotation, Assignability of Proceeds of Claim for Personal Injury or Death, 33 A.L.R.4th 82 (1984). However, we have no need to determine whether the prohibition against the assignment of tort claims is limited to personal injury claims, because we conclude that Kimball's indemnification claim is contractual in nature.
[7] Under the agreement, Baker is entitled to the first $15,000 of any recovery against Northfield plus 50% of the remainder. Thus, if the full $250,000 claim were recovered, Baker would receive $15,000 plus 50% of $235,000 ($117,500), for a total of $132,500, and Kimball would receive the remaining $117,500.
[8] We note that a party seeking to establish a claim for common law indemnity ordinarily must show that it was free of fault in causing the injury. See Promaulayko v. Johns Manville Sales Corp., supra, 116 N.J. at 511, 562 A.2d 202; Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566, 410 A.2d 674 (1980).