875 A.2d 254 (2005)
378 N.J. Super. 160
J. Beyer BRAY and Mary Bray, Plaintiffs-Appellants,
v.
CAPE MAY CITY ZONING BOARD OF ADJUSTMENT, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 19, 2005.
Decided June 14, 2005.
*255 Gerard W. Quinn, Atlantic City, argued the cause for appellants (Cooper, Levenson, April, Niedelman & Wagenheim, attorneys; Mr. Quinn, on the brief).
James H. Pickering, Jr., argued the cause for respondent.
Before Judges SKILLMAN, GRALL and GILROY.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
Plaintiffs obtained site plan approval from the Cape May City Planning Board for development of a "tourist/guest house," which is a permitted use in the zone in which their property is located. Seven years later, they applied to the Board of Adjustment for an opinion that the facility constructed pursuant to this site plan approval is actually a hotel, which is not a permitted use in the zone, and that plaintiffs are entitled to operate a public restaurant in that facility as an accessory use. The Board of Adjustment rejected this claim, and the trial court affirmed the Board's decision. We hold that the doctrine of judicial estoppel bars plaintiffs from claiming that the facility for which they obtained site plan approval as a "tourist/guest house" is actually a "hotel" in which they may operate a restaurant as an accessory use.
On October 24, 1994, plaintiffs applied to the Cape May City Planning Board for site plan approval for a proposed development that they described as a "Guest House." Plaintiffs' application stated that the present use of the structure on the property, a historic building called the "George Allen House," was an "Inactive Guest House," and that their proposed development would consist of twenty-three guestrooms and owner's quarters. The development was planned to be completed in two phases. In the first phase, the existing building would be restored for fourteen guestrooms, and in the second phase, an addition would be constructed to accommodate nine more guestrooms, the owner's quarters and a small conference facility. Plaintiffs also applied for a number of bulk variances.
When plaintiffs applied for approval of their proposed site plan, "tourist/guest houses" were a permitted use in the zone where the property is located, but "hotels" were not a permitted use. This zoning remains in effect at the present time.
During the hearing on plaintiffs' application, some members of the Planning Board expressed concern that plaintiffs' proposed development would be a hotel, but plaintiffs reassured the Board that their business would be simply a bed and breakfast that would fall within the zoning ordinance's definition of a "tourist/guest house." At one point during the hearing, a Board member had the following colloquy with plaintiffs' counsel:
[Board member]: ... I just wondered what your definition of a hotel versus a 

*256 [Plaintiffs' counsel]: We don't ... intend to  this is designed to be a bed and breakfast inn, and it's recognized under your ordinances historically and as spelled out. You know, is it a hotel under some definitions? Absolutely.
[Board member]: Well, ... I could buy ... the bed and breakfast with the original building, but with this addition going on, you know, ... I think we're cutting a real fine line here, and I understand it is your latitude to call it a bed and breakfast, but it 
[Plaintiffs' counsel]: To me it's a bed and breakfast.
[Board member]:  [T]o me it's a hotel. So that's all.
[Plaintiffs' counsel]: You can call it whatever you  you can call it whatever you like, but ... it meets both definitions.
....
[Plaintiffs' counsel]: ... [T]here's no attempt to play with any definitions here. This is absolutely, without question, designed to be a large bed and breakfast inn, period, end of story.
On February 15, 1995, the Planning Board granted plaintiffs' application for approval of its site plan and the associated bulk variances, which was memorialized by a resolution adopted on April 5, 1995.
Shortly after obtaining these approvals, plaintiffs applied for approval of revisions to their site plan, including the proposed addition of a kitchen in the basement, and additional bulk variances. At the hearing on this application, plaintiffs indicated that the kitchen would be used to provide breakfasts for guests at the bed and breakfast facility and also enable plaintiffs to make lunches available for guests. When Board members expressed concern that plaintiffs might later attempt to convert their premises to other uses, plaintiffs' counsel responded:
[W]e didn't come in here and say, "Hey, guys, we want to build a couple different buildings on this property, we want to open up stores, we want to open up restaurants." We didn't do any of that. We said, "This is a bed and breakfast...."
This response was echoed by Richard Wilde, who was one of the facility's owners at the time:
It's not a restaurant.... It's a kitchen in our house so that we can cater to our guests.
Plaintiffs' counsel also noted that restaurants are not a permitted use in the zone and therefore a use variance would be required to utilize the property for this purpose:
[T]here seemed to be a question whether we had a hidden agenda to create a restaurant at this juncture, and that's not the intention. We recognize that would take a use variance. We're not asking for a use variance. This Board couldn't give one, anyway. They're not authorized to. We're not here for that, nor is that our plan.
On November 29, 1995, the Planning Board granted plaintiffs' application for approval of the revisions to their site plan, which was memorialized by a resolution adopted on February 7, 1996.
On April 3, 1996, the Board adopted another resolution granting plaintiffs final site plan approval. This resolution stated: "The final plan shall have a note stating the applicants understand and agree that the service of meals shall be limited to ninety-six (96) registered guests in accordance with subsection 19-38.2 of the Cape May City Zoning Ordinance." The only permitted accessory use for tourist/guest houses under this subsection of the zoning *257 ordinance is "service of meals, limited to registered guests."
On January 14, 1998, plaintiffs applied to the Planning Board for approval of additional revisions to their site plan to allow construction of a swimming pool and pool house. This application stated that the use of the facility as a "tourist/guest house" would remain the same. In his comments regarding this application, the zoning officer indicated that a function had been conducted at plaintiffs' facility, which apparently involved service of food to persons other than registered guests, and that "[i]n order to operate a restaurant at this site the applicants must apply to the Zoning Board of adjustment for a use variance and site plan approval."
In July 2000, plaintiffs applied to the Board of Adjustment for a use variance to allow them to "utilize existing bed and breakfast for public use." Plaintiffs subsequently withdrew their application, and instead, in February 2002, they sought an opinion from the municipal solicitor that their dining facilities could be opened to the public without a use variance on the theory that, although approved by the Planning Board as a tourist/guest house, the premises is actually a hotel because it can accommodate more than twenty guests and a restaurant is an accessory use to a hotel. This opinion request was referred to the solicitor for the Planning and Zoning Boards, who rejected plaintiffs' claim that their facility is a hotel.
The Zoning Officer subsequently advised plaintiffs they would need to obtain a use variance to operate a restaurant. Plaintiffs appealed the Zoning Officer's determination to the Zoning Board, which concluded by a resolution adopted on July 9, 2003, that plaintiffs could not operate a restaurant on their premises without a use variance:
Applicants' assertion that they are a hotel and not a tourist/guest house is revisionist history. Just because it meets the definition of a hotel because it has more than 20 rooms, it is not a hotel because it never was given a use variance to operate in this zone where a hotel is not a permitted use. The applicants have had the benefit of not being designated a hotel in that they never had to get a use variance, but now desire to change the designation that they chose. For three applications before the planning board, they were a tourist/guest house. Applicants chose their fate and cannot change their designation now. Applicant cannot be permitted to bring through the backdoor of the City Ordinance a hotel which they have not tried to bring through the front door of the City Ordinance via a use variance.
Plaintiffs brought this action in lieu of prerogative writs challenging the Board's resolution. The trial court concluded in an oral opinion that a restaurant is not a permitted use in the zone where plaintiffs' property is located and that the Planning Board's grant of site plan approval for a tourist/guest house, which is a permitted use in the zone, did not provide authorization for plaintiffs to operate a restaurant:
That record fairly establishes that which the Plaintiffs readily concede here, and that is that at the time of their application to the Planning Board of the City of Cape May, for preliminary and site plan review and approval and related bulk variances, the application proposed a use which was a permitted use in the CS-2 zone, a tourist guest house.... The actual use originally proposed, ultimately approved and thereafter undertaken by the Plaintiffs has not changed, with the exception of what apparently was determined by municipal officials to be an unpermitted, unauthorized expansion of the restaurant use. The only change *258 ... relates to the Applicant's desire to now expand its restaurant facility to include public dining, to the extent of the 50 seats.
Plaintiffs appeal from the judgment memorializing this ruling and dismissing their complaint.
We conclude that plaintiffs are barred by judicial estoppel from claiming that the facility for which they obtained site plan approval as a "tourist/guest house" is actually a "hotel" in which they may operate a public restaurant as an accessory use. The doctrine of judicial estoppel bars a party who has successfully asserted a position before a court or other tribunal from asserting an inconsistent position in the same or a subsequent proceeding. Ali v. Rutgers, 166 N.J. 280, 288-89, 765 A.2d 714 (2000); Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J.Super. 596, 606-07, 760 A.2d 794 (App. Div.2000), certif. denied, 167 N.J. 88, 769 A.2d 1051 (2001). "The doctrine prevents litigants from `playing fast and loose' with, or otherwise manipulating, the judicial process." State v. Jenkins, 178 N.J. 347, 359, 840 A.2d 242 (2004) (quoting State, Dep't of Law & Pub. Safety v. Gonzalez, 142 N.J. 618, 632, 667 A.2d 684 (1995)). "Central to that concern is the principle that a litigant should not be allowed to mislead courts by having one tribunal rely on his or her initial position while a subsequent body is led in a different direction." Ibid. "The principle is that if you prevail in Suit # 1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events." Kimball, supra, 334 N.J.Super. at 607, 760 A.2d 794 (quoting Eagle Found., Inc. v. Dole, 813 F.2d 798, 810 (7th Cir.1987)).
Although the doctrine of judicial estoppel is most frequently invoked in judicial proceedings, it is also applicable in the administrative process. See Gonzalez, supra, 142 N.J. at 632, 667 A.2d 684; Ramer v. N.J. Transit Bus Operations, Inc., 335 N.J.Super. 304, 311-12 n. 2, 762 A.2d 297 (App.Div.2000); Ensslin v. Bd. of Trs., Police & Firemen's Ret. Sys., 311 N.J.Super. 333, 336, 709 A.2d 1344 (App. Div.1998); see also Morton Int'l, Inc. v. Gen'l Accident Ins. Co. of Am., 134 N.J. 1, 75-76, 629 A.2d 831 (1993), cert. denied, 512 U.S. 1245, 114 S.Ct. 2764, 129 L. Ed.2d 878 (1994); Zoning Bd. of Adjustment of Green Brook v. Datchko, 142 N.J.Super. 501, 508-09, 362 A.2d 55 (App.Div.1976). Therefore, a party may not "play fast and loose" with an administrative agency by asserting a position before the agency that is inconsistent with a position the party has successfully asserted before a court or other administrative tribunal. Gonzalez, supra, 142 N.J. at 632, 667 A.2d 684.
Plaintiffs repeatedly represented in their original and revised applications for site plan approval and in their presentations to the Planning Board that their proposed development project would be a "tourist/guest house," which is a permitted use in the zone where their property is located. Moreover, when members of the Board suggested that plaintiffs' proposed structure could be considered a hotel because of its size and number of guestrooms, plaintiffs and their attorney emphatically rejected this suggestion, insisting that their intent was solely to operate a bed and breakfast that would fall within the Cape May zoning ordinance's definition of a tourist/guest house. The Planning Board's acceptance of plaintiffs' representation that their proposed facility would be a tourist/guest house rather than a hotel was a prerequisite to the Board's consideration of plaintiffs' site plan application because a hotel is not a permitted use in the zone, and therefore a use variance, which only a Board of Adjustment has authority to grant, see Ferraro *259 v. Zoning Bd. of Adjustment Holmdel, 119 N.J. 61, 70-71, 574 A.2d 38 (1990), would have been required for plaintiffs to construct a hotel. Furthermore, if the Planning Board had rejected plaintiffs' representation that their proposed facility would be a tourist/guest house and required them to apply to the Board of Adjustment for a use variance, plaintiffs would have had to satisfy a substantially more onerous evidential burden than is required for site plan approval of a permitted use. Compare Sartoga v. Borough of W. Paterson, 346 N.J.Super. 569, 581, 788 A.2d 841 (App.Div.) (holding that "a planning board's authority in reviewing a site plan application is limited to determining whether the plan conforms with the municipality's zoning and site plan ordinances"), certif. denied, 172 N.J. 357, 798 A.2d 1270 (2002), with Medici v. BPR Co., 107 N.J. 1, 17-18, 21, 526 A.2d 109 (1987) (holding that use variance for commercial development may be granted only upon a showing that applicant's property is "particularly suitable" for the proposed use and based on "an enhanced quality of proof and clear and specific findings ... that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance"). For these reasons, we conclude that this is an appropriate case for application of the doctrine of judicial estoppel to bar plaintiffs from claiming that their facility is not a tourist/guest house but instead a hotel in which they have a right to operate a restaurant as an accessory use.
Finally, we note that even if plaintiffs' facility was a hotel and not a tourist/guest house, plaintiffs still would lack authority to operate a restaurant because a hotel is not a permitted use in the zone, and plaintiffs have never obtained a use variance. Therefore, if we concluded that plaintiffs' facility is not a tourist/guest house within the intent of the Cape May zoning ordinance, the only consequence of this conclusion would be that the Planning Board lacked jurisdiction to grant plaintiffs' site plan application.
Affirmed.