**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3747-18T3

IN THE MATTER OF THE ESTATE
OF ELIZABETH J. SISTO,
     Deceased.

_____

Submitted May 19, 2020 – Decided July 22, 2020

Before Judges Fisher, Accurso and Gilson.

On appeal from the Superior Court of New Jersey,
Chancery Division, Somerset County Docket No.
P-12-01201.

Donnelly Minter & Kelly LLC, attorneys for
appellants/cross-respondents John M. Sisto, Jr., and
Donald E. Sisto (Patrick B. Minter, of counsel; Seth
Alan Abrams, on the briefs).

McElroy, Deutsch, Mulvaney & Carpenter, LLP,
attorneys for respondents/cross-appellants Susan Sisto
Cusick and James Sisto (John P. Beyel, George H.
Parsells, III, and Vimal K. Shah, on the brief).

PER CURIAM

     This appeal concerns the disposition of a probate action filed by two

siblings (Donald and John, Jr.) for an accounting of their mother Elizabeth's

estate from the co-executors, the two other siblings (Susan and James). The accounting was provided, Donald and John, Jr. lodged their exceptions, and the judge conducted an evidentiary hearing to evaluate those exceptions. Because our standard of review requires deference to judge-made fact findings when supported by credible evidence, we reject the arguments posed by Donald and John, Jr. We also find no merit in Susan and James's cross-appeal.

To put the issues in perspective, we briefly outline the circumstances that preceded the action. The four parties to this appeal and cross-appeal are the children of John Sisto, Sr., and Elizabeth Sisto. John, Sr. and his brother conducted a demolition and excavation business through an entity known as United Excavating Company. When, in the 1970's, litigation arose with his brother's estate, John, Sr. started a new company that conducted the same type of business, Dallas Contracting. To avoid entanglement with the litigation with his brother's estate, John, Sr. placed ownership in the new entity in the names of his two oldest sons, Donald and John, Jr. Notwithstanding, John, Sr. operated the company; Donald and John, Jr. were his subordinates. Susan joined the business in 1983.

The family was later shattered when, in 1986, Donald and John, Jr. gave notice that they were taking over Dallas Contracting, cutting out both John, Sr., and Susan. Having settled the litigation with his brother's estate, John, Sr.

2

became the outright owner of United Excavating, and, once squeezed out at Dallas Contracting by his elder sons, John, Sr. operated United Excavating along with Susan and his youngest child, James.

John, Sr. died in 2003. His Will expressly disinherited Donald and John, Jr.[1] John, Sr. bequeathed the bulk of his tangible personal property to his wife, Elizabeth. His business interests, however, were divided and placed into a Marital Trust and a Residuary Trust. Susan and James were named as the co-trustees of the two trusts and co-executors of John, Sr.'s estate.

At the time of John, Sr.'s death, United Excavating owned four commercial rental properties:

- a twenty-five percent interest (Susan and James owned the rest) in South River Storage Company;

- a fifty percent share of H&S Management, which owned retail property;

- a warehouse in South Plainfield; and

- retail space in Westfield.

United Excavating also then owned: three vacant parcels of land, snow-removal equipment, and stock in various publicly-traded companies.

---

[1] "I specifically and intentionally make no provision for my sons, JOHN MICHAEL SISTO, JR., and/or DONALD E. SISTO or their issue in my Will."

John, Sr. directed that the net income from both trusts be paid to Elizabeth during her lifetime. He also gave Susan and James - the co-trustees - the sole discretion to make payments to Elizabeth from the principal of both trusts for her health, maintenance, and support, without taking "into consideration any other resources any person may have." He also expressed a desire that the co-trustees' decisions not be questioned: "The trustees' determination as to the advisability of making any such payment shall be binding on all persons interested in said trust." Through the inclusion of other broad language, John, Sr. expressly imbued Susan and James with complete discretion in running, managing, liquidating and investing in the business's interests, which were valued at the time of his death, at over $5,000,000.

Susan and James served in their positions as co-trustees from the time of their father's death in 2003 until their mother's death in 2012. During that period, Elizabeth received more than $1,200,000 in distributions from the trusts, an amount that was – as the judge later found – greater than that to which she was actually entitled. Despite being the owners of seventy-five percent of South River Storage, Susan and James distributed to Elizabeth all that entity's income; they also relinquished any fees to which they were entitled as co-trustees.

Evidence adduced at the plenary hearing, which produced the orders now under review, demonstrated Elizabeth was a "spender," so that by the time of her death, she had gone through nearly all the trust distributions. Elizabeth frequented high-end stores,[2] drove an expensive vehicle, and owned an extensive jewelry collection. She did not save; James testified she "never had a savings account in her entire life [but] she had a checkbook and all she did was write checks." At the time of her death, Elizabeth's liquid assets amounted to $7587.

John, Sr.'s Will directed that all the trusts' assets would go to Susan and James when Elizabeth died. Elizabeth's Will named Susan and James co-executors and directed that they pay all her debts and sell her home "as soon as practicable . . . at such price and upon such terms and conditions . . . as [they] may determine." Elizabeth bequeathed her jewelry to Susan, leaving the balance of her tangible personal property to be divided equally among all four children, including Donald and John, Jr. Elizabeth's Will placed the remainder of her property – a condominium, the proceeds of the sale of her Watchung home, vacant lots adjacent to that home, and a Florida home – in a trust. On her death, Susan and James became trustees of that trust. The trust directed

---

[2] James testified that Elizabeth "didn't know Target and she didn't know Walmart[;] she didn't shop at the [D]ollar [S]tore."

that the Florida home go to Susan and James; the remainder was to be divided equally among all four of her children.

In short, although disinherited by their father, Donald and John, Jr. were made beneficiaries of their mother Elizabeth's estate as well as the trust containing some of her property. This arrangement gave them an interest in demonstrating more funds or assets should have been found in those juridical entities than revealed in the accounting. In attempting to maximize their interests, Donald and John, Jr. filed a complaint that sought to challenge the actions taken by Susan and James in their capacity as co-trustees of the trusts created by John, Sr. But because they had been disinherited by their father, who gave Susan and James considerable discretion over the management of those trusts, the judge correctly ruled that Donald and John, Jr. lacked standing to complain about Susan and James's actions as co-trustees of the trusts created by John, Sr.; they do not seek our review of that determination.

Donald and John, Jr., however, were beneficiaries of both their mother's estate and her trust and, thus, had standing to seek an accounting of the actions taken by Susan and James as co-executors of Elizabeth's estate and co-trustees of her trust. After an evidentiary hearing, the judge filed, on June 26, 2018, a thorough written opinion and entered a judgment that: rejected all Donald and John, Jr.'s exceptions; approved the accounting; and allowed Susan and

6

James's claims for commissions and fees, leaving the quantification of their claims on submission of their final accounting.

In October 2018, Susan and James submitted their second and final accounting and filed a verified complaint seeking its approval. Donald and John, Jr. served a subpoena for documents from the accountant retained by Susan and James; the judge quashed that subpoena by order entered on January 25, 2019. On March 22, 2019, the judge issued a final judgment approving the final accounting for reasons expressed in another written opinion. Susan and James moved for reconsideration as to the denial of a portion of the fees they sought; that motion was denied on August 5, 2019.

Donald and John, Jr. filed this appeal, seeking review of the two judgments and the order that quashed their subpoena. Susan and James cross-appealed, seeking review of certain aspects of the judge's ruling about their fees and about what they claimed was a loan payable to them from the estate. We affirm in all respects.

At the heart of Donald and John, Jr.'s appeal is their first point:

> I. [SUSAN AND JAMES] BREACHED THEIR
> FIDUCIARY DUTIES IN THEIR ROLES AS CO-
> EXECUTORS OF [ELIZABETH'S] ESTATE.

Their attack largely addresses three specific items – the so-called management fees, the reclassified loan, and the Cusick loan – that we need only briefly describe.

In managing the trusts created by John, Sr., the co-trustees – in the exercise of their considerable discretion – deemed it appropriate to use income from income-producing assets to keep non-income-producing properties afloat and to also generate distributions for Elizabeth in the years following John, Sr.'s death. Labeled by the co-trustees' accountant as "management fees," these were dollar-for-dollar transfers designed to reduce or eliminate the tax-impact on the trusts[3] and had no impact on the amount of net income paid to Elizabeth during the remainder of her life. These items, despite their label, were not, as Donald and John, Jr. argued, property management fees. More importantly, these were transactions between and involving the two trusts created by John, Sr., as to which Donald and John, Jr., had no interest. The judge correctly rejected this exception.

Donald and John, Jr. next argued about a 2007 entry in Sisto Realty's general ledger that identified a loan payable to Elizabeth that was later "reclassified" as a loan payable to Susan and James. The judge found from the

---

[3] This was explained by Susan and James's accounting expert who testified that through this process United Excavating was "virtually" freed of any "income tax" obligation.

testimony of Richard Parness, the accountant who prepared the ledger, that the earlier entry was simply wrong. Parness testified that the $182,838 loan was owed by Sisto Realty to John, Sr. When making the earlier entry, Parness believed that Elizabeth had inherited John, Sr.'s assets and, so, he noted in the ledger that the loan was payable to Elizabeth. On learning the truth, Parness reclassified the loan as payable to Susan and James[4]; in fact, that was also erroneous since the right to payment of the loan belonged to the trusts. In any event, the judge considered all the evidence, rejected Donald and John, Jr.'s arguments,[5] and found "the loan never belonged to Elizabeth," so Susan and James had no duty to pay to Elizabeth's estate the amount of the loan from the trusts.

The third plank of Donald and John, Jr.'s arguments about the June 26, 2018 decision, concerns the so-called "Cusick loan." The evidence revealed that when John, Sr. died, Elizabeth no longer wished to reside in their Watchung home. She was instead desirous of purchasing a condominium then under construction, so Susan and her husband, George Cusick, took out a home

---

[4] Susan and James, as the evidence reveals, were not aware of these accounting entries.

[5] Donald and John, Jr., allude to the fact that this loan wasn't, but should have been, listed on John, Sr.'s IRS Form 706. That may be true, but it doesn't alter the fact that the loan was payable to John, Sr., and that on his death that loan payable was an asset of the trusts.

A-3747-18T3

equity loan and lent the proceeds to Elizabeth for the purchase of the condominium. The proceeds from the Cusick loan were also used to enhance and repair the Watchung home to maximize its sale price and to subdivide the property so as to create two vacant adjoining lots. The amount lent by the Cusicks to Elizabeth totaled $389,243.

As the judge observed in her written findings, Donald and John, Jr. "conceded at trial that Susan and her husband, George, had loaned money to Elizabeth" but "they assert that the absence of documentation of its existence and of its total amount, somehow renders it invalid" and that "an independent executor would have spent the [e]state's resources suing Susan to recover its entire amount." The judge rejected this thesis, concluding there was "nothing wrong" – as Donald and John, Jr.'s own expert acknowledged – with Susan and her husband's decision not to extract a promissory note or other documentation from Susan's mother to memorialize either the loan or the amount. The judge found that the loan was made and in the amount in question. The co-executors were obligated by the terms of Elizabeth's Will, which required that her debts be paid, to repay Susan and her husband.

As our examination of the extensive record reveals, Donald and John, Jr. largely quarrel with the judge's view of the evidence. That limits our role. We do not independently review the evidence. Unless "wholly insupportable as to

10

result in a denial of justice," we will not disturb a judge's factual findings when supported by credible evidence. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974). The judge's findings are all well-supported by the evidence the judge found credible. We, thus, reject Donald and John, Jr.'s first point that Susan and James breached their fiduciary duties as co-executors of Elizabeth's estate, for the reasons briefly outlined above and substantially for the reasons set forth in Judge Margaret Goodzeit's comprehensive and thoughtful written opinion.

Donald and John, Jr. present three other points for our consideration:

> II. THE COURT ERRED WHEN IT FAILED TO ANALYZE AND APPLY N.J.S.A. 2A:65-5 AS [SUSAN AND JAMES'S] CONDUCT RESULTED IN WASTED INHERITANCE.
>
> III. THE COURT ERRED IN GRANTING [SUSAN AND JAMES'S] MOTION TO QUASH THE SUBPOENA TO MR. PARNESS FOR DOCUMENTS HIDDEN/NOT PROVIDED DURING DISCOVERY.
>
> IV. THE COURT ERRED IN AWARDING ATTORNEYS FEES TO [SUSAN AND JAMES] BECAUSE THEIR ACTIONS DEPLETED, NOT INCREASED, THE FUND IN COURT.

We find insufficient merit in these arguments to warrant further discussion in a written opinion beyond what we have already stated. R. 2:11-3(e)(1)(E). We reject these arguments substantially for the reasons set forth in Judge Goodzeit's written opinions.

A-3747-18T3

In their cross-appeal, Susan and James argue:

> I. THE COURT'S APPLICATION OF JUDICIAL ESTOPPEL WITH RESPECT TO ITS DISALLOWANCE OF [SUSAN AND JAMES'S] $147,000 LOAN TO THE ESTATE[] WAS IN ERROR.
>
> II. AS A MAT[T]ER OF LAW AND EQUITY, THE COURT ERRED BY DENYING THE ENTIRETY OF THE FEES [SUSAN AND JAMES] INDISPUTABLY PAID THEIR FIRST COUNSEL, DAY PITNEY.
>
> III. THE COURT ERRED BY REDUCING THE ALLOWED FEES OF [SUSAN AND JAMES'S] LITIGATION COUNSEL AND TESTIFY[]ING ACCOUNTING EXPERT.

We find insufficient merit in these arguments to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following few comments on each.

In the first of these points, Susan and James argue that the judge erroneously applied the doctrine of judicial estoppel in refusing to allow their claim that the estate was obligated to repay them $147,000. This amount, they claim, is the sum of various payments they personally made on behalf of the estate, namely, mortgage payments, real estate taxes, income taxes, utility bills and other similar items. They claimed they made these payments because the estate was illiquid.

The judge did not consider the factual basis for this item but instead estopped Susan and James from seeking this compensation because the claim was inconsistent with the earlier accounting. We agree with the judge's disposition.

In the earlier accounting, Susan and James characterized this $147,000 item as "income transferred to principal," not a loan payable to them. Because of that description, it is not surprising that Donald and John, Jr. neither excepted nor complained. It was only after the judge's final disposition of the factual disputes – following years of litigation, a three-day plenary hearing, and extensive findings rendered by the judge in her forty-five-page written decision – that Susan and James changed course and asserted that this $147,000 item was a loan payable to them.

The judge properly applied the doctrine of judicial estoppel. Susan and James had succeeded in gaining the judge's approval of the first accounting, which included this item as "income transferred to principal," but then made a 180 degree turn and claimed the item represented a loan payable to them from the estate. The doctrine of judicial estoppel is applied when a party prevails in one suit by arguing that a fact or position is true and then contradicts that fact or position in later litigation. See Bhagat v. Bhagat, 217 N.J. 22, 36 (2014); Kimball Int'l., Inc. v. Northern Metal Prods., 334 N.J. Super. 596, 607 (App.

A-3747-18T3

Div. 2000). Susan and James were not entitled to characterize this $147,000 item one way in the proceedings about the first accounting and then assert a contrary factual position when seeking approval of their final accounting.

In their second point on the cross-appeal, Susan and James argue that the judge erred in rejecting their claim for reimbursement of nearly $100,000 in fees generated by the activities of their prior counsel, Day Pitney. The judge explained in a written decision that the materials submitted in support of that claim were insufficient. The judge noted, for example, that Susan and James did not submit a certification from a Day Pitney attorney that contained the information mandated by RPC 1.5, and that the invoices submitted did "not indicate the respective levels of experience of the named billing individuals or what their billing rates were." In short, the judge viewed the application for payment from the estate of Day Pitney's fees as "woefully deficient."

We agree. A court cannot ascertain the reasonableness of a fee request without the presentation required by RPC 1.5 and without basic information about the billing attorneys and their hourly rates. The application was properly denied, and we find no abuse of discretion in the judge's denial of the reconsideration motion that for the first time provided greater support for these fees. The Day Pitney firm was replaced by current counsel years before the fee application was presented. There was no reasonable excuse for the failure

14

to marshal the facts necessary for the judge's original decision, and the judge was not required to allow a second bite of the apple by way of a reconsideration motion.

We lastly reject the cross-appeal's third point, which questions the factual grounds upon which the judge relied in trimming certain aspects of current counsel's fee request – as well as the request for the fees of a testifying expert – in ultimately fixing reasonable fees chargeable to the estate. The task then before the judge was fact sensitive and the judge, who presided over this litigation for years, was certainly in a far better position than this court to ascertain what was fair and reasonable under the circumstances. Because the judge fully explained the factual basis for the award, we cannot conclude there was any abuse of discretion. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001). Instead, having closely examined the record and the judge's thorough explanation for her disposition of the fee requests in question, we affirm substantially for the reasons set forth by Judge Goodzeit in her written decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15                                                                    A-3747-18T3